In re the Marriage of: Marlin L. ER-
LANDSON, petitioner, Respondent,

v.

Rose Helen ERLANDSON, Appellant.

No. 51559.

Supreme Court of Minnesota.

March 26, 1982.

Schermer, Schwappach, Borkon & Ram-
stead and Barbara L. Heck, Minneapolis,
for appellant.

Richard Newgren, Minneapolis, for peti-
tioner, respondent.

AMDAHL, Chief Justice.

Appeal by Rose Helen Erlandson from an order for judgment and judgment and decree entered April 30, 1980, in which the marital status of Rose and Marlin Erlandson was dissolved pursuant to the petition of Marlin on the grounds of irretrievable breakdown. The issue on appeal is whether the trial court erred in the type and amount of maintenance awarded to Rose. Affirmed.

Rose and Marlin were married October 31, 1959. A son and daughter were born of the marriage. At the time of dissolution, Rose was 49 and Marlin was 48 years of age and both children were living with petitioner. The daughter was an employed adult and the son, born on May 31, 1963, was still a minor.

The evidence at trial established that Marlin, a high school graduate who had taken some college courses, had been employed and was the provider of income for the family throughout the marriage. At the time of trial, he was employed in a managerial position at an annual salary of $30,500. Marlin testified that he was not aware of any career advancement prospects although he did expect yearly salary increases.

Rose, who had completed ninth grade, had vocational training in 1954 for comptometry and for typing in 1951 and 1979. She was employed during the first 5 years of the marriage and then terminated employment to care for the children.

Physical injuries, caused by accidents, have limited Rose's physical ability and have caused her severe pain. She has required surgical procedures to her neck and to her hands. She has pain upon continuous lifting or upon lifting heavy objects. She has a maximum typing ability of 30 words per minute but has difficulty typing as her hands get sore, tired, and swollen. She has no problems performing detail work but suffers pain when looking sideways. She cannot drive far and riding the bus causes jolting and pain to her neck. Rose returned to employment as a shipping inspector in August of 1973 and held that position until April of 1974 when she quit to undergo neck surgery. She returned to employment in June of 1977 and was employed at various jobs at pay rates of $2.50 to $3.40 per hour from that time to mid-December, 1979. Her usual reason for leaving a position was that the required activities caused her pain. In December of 1979 she began work as an inventory clerk at $3.40 per hour plus benefits of paid holidays and major medical, dental, and life insurance at no cost to her. She was employed at that job at the time of dissolution and although she knows of no opportunity for a salary raise, she intends to remain at the job because there is possibility of advancement and her supervisor had indicated that she was performing well.

In 1979, she received wages of $6,395 and her annual earnings at the time of the dissolution were approximately $7,072; her take home net pay was $461.58 per month.

A counseling supervisor for the Minnesota Department of Economic Security testified that in his expert opinion, Rose's employment prospects would not improve with initial training, and the nature of her vocational disability was such that jobs requiring dexterity and coordination, such as factory jobs, or occupations involving heavy or continuous lifting, were inappropriate. He testified that she has demonstrated that she is an employable person who could work in a clerical job of a sedentary nature until normal retirement age and that her maximum annual earning capacity was probably $10,000 since retraining would most likely prove futile. The problems she experienced with her hands and elbows would, in his view, prevent her from obtaining a job of supervisory capacity or as a skilled secretary.

The trial court determined the market value of the assets of the parties, after deducting encumbrances, to be $59,249.49. Debts, excluding encumbrances on real and personal property, were $1,971.38. The court then ordered that petitioner be

awarded assets of the value of $28,336.96 [1] and pay debts of $1,798.80. The petitioner was thus awarded a net amount of $26,-538.16.

The court awarded assets of the value of $30,912.53 to respondent and required that she pay a debt of $172.58. Respondent was thus awarded a net amount of $30,739.95.

Among the assets was the homestead which the court determined to have a market value of $53,000 and a present mortgage of $9,333.44 or a net value of $43,-666.56. Respondent was granted possession of the homestead and required to pay the monthly mortgage installments (principal, interest, taxes, and insurance) of $170.05 with the requirement that the property would be sold upon the happening of any of certain conditions [2] and, in any event, not later than 3 years from the date of the filing of the judgment and decree. The court further directed that upon sale of the homestead the amount of principal paid by respondent between the date of the decree and the date of sale be deducted from the proceeds of sale and repaid to her before the division of one-third of the proceeds to the petitioner and two-thirds to respondent.

The court further determined that net proceeds of a personal injury suit were not marital assets and accepted a determination of another court that respondent was entitled to $18,838 and that petitioner was entitled to $1,900 of such proceeds.

At trial Rose submitted a monthly expense budget of $827.05 for herself and the minor child. This figure was not challenged by Marlin.

The court, after considering the assets, income, future income, and needs of the parties, directed petitioner to pay $250 per month support for the minor child of the parties until May 31, 1981, when the child would reach majority. The court also ordered petitioner to pay respondent $125 per month for spousal maintenance until her death, her remarriage, or further order of the court.

We assume that the homestead will be sold as required by the trial court and that the sale will be at or near the market value determined by the court. Respondent may anticipate receipt by her of two-thirds of the proceeds from the sale after deduction of sale expenses. Under normal circumstances, respondent should receive at least $26,000. She will have, barring expenditures from the personal injury settlement, about $45,000 for investment purposes. She will thus have income from that amount in addition to her earnings, plus fringe benefits of major medical and dental insurance provided by her employer and the permanent spousal maintenance of $125 per month required to be paid by petitioner.

■ The standard of review on appeal from a trial court's determination of a maintenance award is whether the trial court abused the wide discretion accorded to it. In the absence of a finding by this court of such abuse, the trial court's determination is final. *Lillehei v. Lillehei*, 298 N.W.2d 453 (Minn.1980); *Cooper v. Cooper*, 298 Minn. 247, 214 N.W.2d 682 (1974). That discretion must be examined in light of the controlling statutory guidelines contained in Minn.Stat. § 518.552 (1980), which contains a detailed enumeration of the several factors to be considered by the trial court.

Our determination of this appeal must be based on Minn.Stat. § 518.552 (1980) and

---

1. The trial court valued these assets at $30,-637.96. However, it computed the value of a pickup and camper unit to be zero. In fact, an encumbrance on the unit exceeded the market value by $2,301. Thus the actual net value of the assets has been reduced by this amount.

2. The judgment and decree provided:
   The property shall be placed on the market for sale, at fair market value, within 30 days after the happening of any of these conditions:
   a. Respondent's remarriage;
   b. Respondent's voluntary sale of said premises;
   c. Respondent's ceasing to occupy said premises as a homestead;
   d. Respondent's death;
   e. When payment on the mortgage principal or interest on said property are more than 60 days delinquent;
   f. Three years from the date of filing of the Judgment and Decree herein;
   whichever event occurs first.

our interpretation of that statute as expressed in *Otis v. Otis*, 299 N.W.2d 114 (Minn.1980) Minn.Stat. § 518.552 provides:

Subdivision 1. In a proceeding for dissolution of marriage or legal separation, or in a proceeding for maintenance following dissolution of the marriage by a court which lacked personal jurisdiction over the absent spouse and which has since acquired jurisdiction, the court may grant a maintenance order for either spouse if it finds that the spouse seeking maintenance:

(a) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs, especially during a period of training or education, and

(b) Is unable to adequately support himself after considering all relevant circumstances through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.

Subd. 2. The maintenance order shall be in amounts and for periods of time as the court deems just, without regard to marital misconduct, and after considering all relevant factors including:

(a) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;

(b) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(c) The standard of living established during the marriage;

(d) The duration of the marriage;

(e) The age, and the physical and emotional condition of the spouse seeking maintenance; and

(f) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance; and

(g) The contribution of each party in the acquisition, preservation, depreciation, or appreciation in the amount or value of the marital property, as well as the contribution of a spouse as a homemaker.

*Id.*

This court in *Otis* recognized several contemporary principles that underlie the new legislation and have a bearing on this case, although they are not directly applicable here because the *Otis* decision involved rehabilitative or temporary maintenance. The *Otis* court reflected on the basic attitudinal change and stated that "[i]n recent years, courts have retreated from traditional attitudes toward spousal support because society no longer perceives the married woman as an economically unproductive creature * * *." *Otis v. Otis*, 299 N.W.2d 114, 116 (Minn.1980) (quoting *Rehabilitative Spousal Support: In Need of a More Comprehensive Approach to Mitigating Dissolution Trauma*, 12 U.S.F.L. Rev. 493, 494 (1978). Today, a spousal support award is based on the notion that the marital relationship involves an economic partnership in which the spouses equally share the burdens and responsibilities of both marriage and dissolution.

It is apparent that Rose meets the two basic conditions that establish a need for maintenance. First, the Erlandsons did not own substantial assets and Rose lacks sufficient property to provide for her needs. Second, her monthly expenses exceeded her net take-home salary, thereby establishing that she is unable to support herself through appropriate employment.

Because each case must be determined on its own facts, *see Cooper v. Cooper*, 298 Minn. 247, 214 N.W.2d 682 (1974), and no single statutory factor for determining the type or amount of maintenance is dispositive, *see* Minn.Stat. § 518.552, subd. 2 (1980), it is important to examine the current situation for Rose and Marlin, noting that although the statute lists seven factors, the issue is basically the financial needs of Rose and her ability to meet those

needs balanced against the financial condition of Marlin.

■ Rose, despite her physical handicaps, is emotionally stable, in generally good health, and able to work to normal retirement age. She was awarded approximately 54% of the marital assets accumulated during the 20-year marriage. While the record is silent as to the marital standard of living, it appears that each of the parties contributed to that accumulation; Marlin contributed through employment outside of the home and Rose contributed through her wife, mother, and homemaker activities together with minimum outside employment.

Marlin's income is adequate to provide him with the ability to meet his needs while providing the ordered spousal maintenance and child support.

Rose's annual salary of $7,072, when augmented by the spousal maintenance and child support payment, is more than adequate to meet her budgeted expenses. She also has the ability to increase that salary to a probable maximum of $10,000 per year. Additionally, she has the income from any investment made of the proceeds of the personal injury action. While the child support income would terminate as of May 31, 1981, the legal duty to support the child would cease at that time for Rose as well as for Marlin. Furthermore, the record does not reflect the amount of the budgeted expenses attributable to the cost of providing for the minor.

Rose also has the discretion to put the homestead up for sale, if she desires to do so, before the 3-year period granted by the court expires. She will, upon sale, whenever made, receive reimbursement for the amount she has paid on the mortgage principal between the date of the dissolution and the date of sale, plus two-thirds of the net sale proceeds.

An examination of the trial court's determination in light of the factors expressed here leads us to the conclusion that the award of permanent spousal maintenance, while certainly minimal, was not clearly erroneous in duration or amount.

Affirmed.

KELLEY, J., took no part in the consideration or decision of this case.

OTIS, Justice (dissenting).

This appeal by Rose Helen Erlandson arises from an order for judgment and judgment and decree entered April 30, 1980, granting respondent's petition to dissolve the parties' marriage on the grounds of irretrievable breakdown. The trial court awarded appellant maintenance of $125 per month pursuant to said dissolution. The basic issue on appeal is whether the trial court erred in the type and amount of maintenance awarded. I would reverse.

The parties were married on October 31, 1959. At the time of the dissolution, Marlin was 48 and Rose was almost 50 years of age. They had two children, one employed adult daughter and a minor son, both of whom were living with appellant.

Respondent is employed at an annual salary of $30,500, and was the provider of income for the family throughout the marriage. He testified at trial that he was not aware of any career advancement prospects although he did expect yearly salary increases. Although appellant worked before and for short periods of time after she married, for most of the 19 years of her marriage she was occupied as a full-time homemaker, primarily responsible for raising the Erlandsons' two children. Before her marriage she had been employed as a comptometer operator, now an obsolete occupation. She received vocational training for typing in 1951 and again in 1979.

As a result of a series of automobile accidents, appellant's physical abilities have been limited and she experiences a great deal of pain. She has had surgery on her neck and hands and has problems rotating her neck, lifting or grasping objects and reaching above her head. She has a maximum typing ability of 30 words per minute but has difficulty typing as her hands get sore, tired and swollen. At the time of the dissolution she was employed as an inventory control clerk at $3.40 per hour plus bene-

fits of paid holidays and major medical, dental and life insurance. Although she knows of no opportunity for a salary raise, she intends to remain at the job because there is a possibility of advancement and her supervisor indicated that she was performing well.

An employment expert testified that Mrs. Erlandson's age, lack of formal education and physical limitations made it unlikely that her employment prospects would improve with initial training and that she could ever earn a gross salary greater than $10,000 per year. Jobs requiring dexterity, coordination or lifting were inappropriate because of her physical disabilities and the problems she experienced with her hands and elbows would, in his opinion, prevent her from obtaining a job in a supervisory capacity or as a skilled secretary.

The trial court made the following division of the marital property:

### Mr. Erlandson

| | |
|---|---|
| Truck Equity | 0.00 |
| Trailer | 500.00 |
| Canoe | 100.00 |
| IRA Certificate | 1,799.44 |
| Savings Certificate | 10,500.00 |
| Checking Acct. | 160.00 |
| Savings Acct. | 100.00 |
| Insurance | 2,923.00 |
| ⅓ equity in homestead | 14,555.52 |
| | 30,637.96 |

### Mrs. Erlandson

| | |
|---|---|
| Household Goods | 1,250.00 |
| Checking Account | 1.49 |
| Trust Fund | 400.00 |
| Insurance | 150.00 |
| ⅔ equity in homestead | 29,111.04 |
| | 30,912.53 |

Respondent was granted possession of the homestead and required to make the monthly mortgage payments of $170.15. The property was to be sold upon the occurrence of certain conditions, or within three years from the date of the decree.

After consideration of the assets, income, future income and needs of the parties, the trial court directed petitioner to pay $250 per month for support of the minor child until such child reached majority and maintenance in the sum of $125 per month until appellant's death or remarriage or until further order of the court.

A trial court's determination of a maintenance award will not be reversed on appeal unless this court determines that there has been an abuse of discretion. *See e.g., Cooper v. Cooper*, 298 Minn. 247, 214 N.W.2d 682 (1974). Minn.Stat. § 518.552, subd. 2 (1980) calls for the trial court's consideration of "all relevant factors" in determining maintenance payments. These factors include, among others, the financial resources of the party seeking maintenance and the other party's ability to make payments, the duration of the marriage, and the age, physical and emotional condition of the party seeking maintenance. *Id.*

It is apparent that appellant meets the two basic conditions which establish a need for maintenance. First, the Erlandsons did not own substantial assets and Rose lacks sufficient property to provide for her needs. Second, her monthly expenses exceeded her net take-home salary, thereby establishing that she is unable to support herself through appropriate employment.

The Uniform Marriage and Divorce Act recognizes that the division of marital property is now viewed as the primary means of providing for the future financial needs of the spouses. *See id.*, Commissioners' Prefatory Note, 9A Uniform Laws Annotated 91, 93 (1979). In the present case the marital assets consist primarily of the homestead valued at $53,000, household goods, a savings certificate of $10,500, an IRA certificate of $1,800 and small amounts in checking and savings. Mrs. Erlandson was awarded a two-thirds equity in the homestead, a trust fund and various household goods. Mr. Erlandson received the savings certificate, IRA certificate, and a one-third share of the homestead. The homestead is to be sold within three years and while appellant will receive part of the proceeds from that sale she will also incur a substantial increase in her living expenses for housing.

This case presents a very different picture from the situation in *Otis v. Otis*, 299 N.W.2d 114 (Minn.1980). There Mrs. Otis

received a property settlement of well over $200,000.00, much of it in stock, an income-producing asset. This distinction is an important one. The value and income-producing capacity of the marital property bears on the need to award supplemental spousal maintenance. *See In re the Marriage of Johnsrud*, 175. Mont. 117, 572 P.2d 902 (1977). In determining whether the award of $125 per month was an abuse of discretion, we must recognize that the marital property awarded Mrs. Erlandson consists mainly of income-consuming rather than income-producing property. The record shows that even with the income from the money received as a personal injury settlement appellant does not have adequate funds to supplement her earnings. She has shown that she is unable to support herself independently and that her situation is unlikely to change. In view of the lengthy marriage, physical and vocational limitations of appellant, lack of income-producing assets in the marital property division, and Mr. Erlandson's employment and ability to pay, in my opinion it was an abuse of discretion to award appellant only $125 per month.

I would reverse.

WAHL, Justice (dissenting).
I join in the dissent of Justice Otis.