**In re the Marriage of William T. BARTL, Petitioner, Appellant,**

v.

**Nancy J. BARTL, Respondent.**

**No. C3–92–1388.**

Court of Appeals of Minnesota.

March 9, 1993.

Joanne Thatcher Swanson, Swanson Law Office, St. Paul, for appellant.

Patrice M. Rico, St. Paul, for respondent.

Considered and decided by HARTEN, P.J., and NORTON and KLAPHAKE, JJ.

## OPINION

NORTON, Judge.

Appellant argues that the trial court's upward modification of his child support obligation was excessive. We affirm in part, reverse in part, and remand for further consideration of the proper amount of appellant's obligation.

## FACTS

The marriage of appellant William T. Bartl and respondent Nancy J. Bartl was dissolved on June 8, 1983. Pursuant to an amended judgment entered December 5, 1983, respondent was granted sole physical custody of the parties' two minor children.

Based upon the parties' written stipulation, the amended judgment required appellant to pay child support of $300 per month per child. The amended judgment also required appellant to maintain health insurance for the children. Appellant was to pay all uninsured medical, dental, and eyecare expenses for the children, and maintain life insurance, with the children named as beneficiaries, for as long as his child support obligation continued.

When the amended judgment was entered in 1983, appellant was self-employed. In 1987, he moved to California to work as a contractor for Steiny and Company. From 1988 through 1991, appellant earned annual gross wages totaling over $50,000. In 1988, his gross wages totaled $50,434; in 1989, they totaled $62,290; in 1990, $70,784; and in 1991, they totaled at least $75,000. Appellant was promoted in early 1991, resulting in an increase in his hourly wage to $33.12 and a living allowance of $430 per month. In January 1992, however, a struggling economy in California resulted in appellant's hours being cut from 40 to 32 per week. He was informed by his supervisor that the decrease was only temporary, and that he would probably return to working normal hours by the end of April 1992.

Without court approval, since 1986 appellant has deducted visitation expenses from his monthly child support payments. He has deducted $20 for each day the children have been with him in California, for a total of $1020. In addition, appellant deducted $100 from one child support payment in 1987 because he had been laid off from work. As a result of these actions, appellant is in arrears in child support payments totaling $1120.

On July 3, 1991, respondent served upon appellant a notice of motion and motion seeking a child support modification. She also served upon appellant interrogatories and document requests. The child support modification hearing was originally scheduled for September 9, 1991. However, appellant did not respond to respondent's discovery requests until September 3, 1991. Even then, his responses were incomplete. On November 5, 1991, the court ordered appellant to fully and completely respond to respondent's discovery requests. On January 22, 1992, respondent served upon appellant her current notice of motion and motion, which was identical to that previously served upon him. The hearing was held on February 26, 1992.

Convinced that appellant would soon return to working full-time, the court determined his net monthly income based upon a 40-hour work week. Utilizing his August 18, 1991 pay stub, the court determined his net income at $3880.70 per month, calculated as follows:

| | | |
|---|---|---|
| Weekly gross income | | $1425.00 |
| less weekly deductions | | |
| Federal income tax | $360.15 | |
| FICA | 109.02 | |
| State income tax | 69.34 | |
| medical insurance | 11.00 | |
| major medical ins. | 19.30 | |
| hospitalization ins. | 10.70 | |
| pension | 43.00 | |
| | $622.51 | |
| Total weekly deductions | | $ 622.51 |
| Weekly net income | | $ 802.49 |

$802.49 weekly net income × 4.3 weeks = $3450.70 of monthly net wages.

$3450.70 monthly net wages + $430.00 monthly allowance = $3880.70 of monthly net income.

Based on this level of income, the court ordered an upward modification of appellant's child support obligation. Pursuant to the Minnesota child support guidelines, appellant's monthly child support obligation would be 30% of his net income, or $1164.20 per month. In determining that appellant could afford this amount, the court noted that, as of October 1991, he had several other sources of income, including a Merrill Lynch Capital Builder Account valued at $19,382.24, an IRA with a balance of $42,000.00, a Bank of America joint checking account with a balance of $3477.75, and a Guardian Savings and Loan

CD valued at $10,874 that was cashed out on October 18, 1991.

The court also found that appellant has remarried and lives with his new wife and her three children from a previous marriage. The court found that appellant and his family have expenses of $3002 per month. Appellant's share of this amount comes to $605.00 per month. The court found that respondent's monthly living expenses currently exceed her net monthly income and child support payments by $611.18 per month and that between June 1983 and December 1991 the cost of living increased 33%.

The court held that the upward modification in child support would be retroactive to the date respondent's initial motion was served upon appellant on July 3, 1991. The court found that it was only because of appellant's failure to fully respond to respondent's discovery request that the hearing was delayed until February 1992.

The 1983 judgment was silent as to which party was to claim the children as tax exemptions. Respondent has claimed the children since 1988. The court held that respondent is entitled to claim the children as tax exemptions commencing January 1, 1991.

## ISSUES

I. Did the trial court err in modifying appellant's future child support obligation?

II. Did the trial court err in requiring appellant to pay child support arrearages?

III. Did the trial court err in considering the effect of cost of living increases only upon respondent's income and not upon appellant's?

IV. Did the trial court err in allowing respondent to claim the children as tax exemptions?

V. Should appellant's motion to strike certain parts of respondent's brief be granted?

## ANALYSIS

### I.

The decision to modify a child support order lies in the broad and sound discretion of the trial court, and an appellate court will reverse for an abuse of that discretion only where it finds a "clearly erroneous conclusion that is against logic and the facts on record." *Moylan v. Moylan,* 384 N.W.2d 859, 864 (Minn.1986). This discretion, however, must be exercised within the limits set out by the legislature. *Id.*

A. The court's determination of William Bartl's income.

■ Appellant claims that the trial court committed several errors which caused it to inflate its estimation of his net monthly income. Minn.Stat. § 518.64, subd. 2 (1992) states in relevant part:

**Modification.** The terms of the decree respecting maintenance or support may be modified upon a showing of one or more of the following: (1) substantially increased or decreased earnings of a party * * *.

The trial court based its determination of appellant's income on a 40–hour work week, whereas at the time of the modification hearing, he was working only 32 hours per week. Appellant claimed that the court's assumption that he would resume working 40 hours per week was speculative, and that it was uncertain when the economic problems which caused him to work fewer hours would dissipate. In *Darcy v. Darcy,* 455 N.W.2d 518, 522 (Minn.App.1990), this court held that although an obligor's prior income is not the only relevant factor in determining his ability to pay child support, it is one of the relevant factors to which a court can look in determining the obligor's net income. The *Darcy* court held that the prior income should be discounted to the extent demanded by the totality of the circumstances. In examining the totality of the circumstances, the trial court should consider the reasons for any disparity between the obligor's prior income and his present income. *Id.*

In the present case, appellant's income as of the hearing differed from his prior income due to an economic recession affecting the entire nation. However, based

upon appellant's prior tax returns indicating that he earned over $50,000 for four straight years, the court concluded that he was a highly skilled individual who eventually would regain his former status. This holding was buttressed by an inter-office memorandum sent to appellant by his employer on January 19, 1992 indicating that appellant would probably resume normal hours by the end of April 1992. In fact, appellant did resume working full time in August 1992. The court's determination of appellant's net monthly income based upon a 40–hour work week was not clearly erroneous.

Appellant asserts that the court should not have considered as income his nonliquid assets, such as his retirement accounts. However, the court based its modification solely on appellant's normal net monthly income. The court merely mentioned appellant's other assets in passing.

■ Appellant also claims that, in calculating his gross monthly income, the trial court erred by adding his $430 monthly living allowance twice. Appellant earns $33.12 per hour. At 40 hours of work per week, his gross weekly income from work is $1324.80, not $1425 as the court found. The court reached the larger figure by adding to appellant's wages his $100 per week living allowance. However, after arriving at the $1425 figure, the court tacked on an additional $430 representing appellant's monthly living allowance. Thus, the court counted the $430 allowance twice.

Respondent acknowledges the court's mistake; however, she claims that it is harmless error. Respondent cites *Dinwiddie v. Dinwiddie*, 379 N.W.2d 227, 229–30 (Minn.App.1985), for the proposition that an increased child support modification may be upheld where equitable, even if there is a minor error in the calculation of the obligor's net income. In *Dinwiddie*, the court upheld a modification premised upon a $358 underestimation of the obligor's net monthly income. However, unlike *Dinwiddie*, this case involves an overestimation of the obligor's income. We do not believe that this error is harmless. As modified, appellant's net income is:

| Weekly gross income | | $1324.80 |
| less weekly deductions | | |
| Federal income tax | $360.15 | |
| FICA | 109.02 | |
| State income tax | 69.34 | |
| medical insurance | 11.00 | |
| major medical ins. | 19.30 | |
| hospitalization ins. | 10.70 | |
| pension | 43.00 | |
| | $622.51 | |
| Total weekly deductions | | $ 622.51 |
| Weekly net income | | $ 702.29 |

$702.29 weekly net income × 4.3 weeks = $3019.85 of monthly net wages.

$3019.85 monthly net wages + $430.00 monthly allowance = $3449.85 of monthly net income.

■ Appellant also claims that the trial court erred in computing his net monthly income by ignoring other deductions to which he is entitled. Under the amended judgment, appellant is required to pay $69 per month to maintain life insurance for his minor children. He is also required to pay their unmet medical needs, which average about $100 per month. Although he did not raise this issue at trial, appellant now contends that these amounts should be deducted from his gross monthly income. Minn.Stat. § 518.551, subds. 5(a)(vi) and 5(a)(vii) (1992) state that these expenses must be deducted to determine net income. The trial court's failure to apply these provisions must be corrected on remand. *See In re Estate of Magnus*, 444 N.W.2d 295 (Minn.App.1989) (holding that legal mistake can be corrected on remand even though not raised at trial).

B. The court's determination of appellant's monthly expenses.

■ Appellant also claims that the court erred in not considering the full dollar amount of his monthly expenses when determining his child support obligation. Although the guidelines do not expressly provide for examination of a noncustodial parent's expenses in calculating the amount to be paid, such evidence must nevertheless be considered when determining the child support obligation. *County of Nicollet v. Larson*, 421 N.W.2d 717, 721–22 (Minn. 1988).

Appellant and his family live in Palm Desert, California. Appellant works at

Steiny and Company 150 miles away in Los Angeles. Because of the commuting distance between home and work, appellant maintains a room in Los Angeles where he lives during the week. The court found that the living expenses for appellant and his family total $3002 per month, making appellant's share $605 per month. In challenging this figure, appellant distinguishes between expenses he incurs in Los Angeles and expenses he and his family incur in Palm Desert. Appellant claims monthly Los Angeles expenses of $1515. Since these expenses are incurred solely for the production of his income, he maintains that he alone is liable for them.

We believe the trial court abused its discretion in giving appellant credit for only one-fifth of his Los Angeles business expenses. Appellant incurs the Los Angeles expenses solely for the production of his income, thus they should be considered in full in determining his child support obligation. On remand, however, the trial court should not credit appellant for expenses that are reimbursed by his employer (e.g., parking expenses). However, the court should not offset any expenses with the $430 monthly living allowance because that amount has already been included in his net income.

Appellant claims that the trial court erred in not including in his personal expenses amounts for grooming, car maintenance, entertainment, and attorney fees. He also claims that the court erred in not allowing him monthly expenses incurred in having his children visit him in California. However, appellant failed to raise these issues at trial, and since Minn.Stat. § 518.-551 does not mandate computing these kinds of expenses when determining net income, the trial court need not do so on remand. *See Pavlasek v. Pavlasek*, 415 N.W.2d 42 (Minn.App.1987).

## II.

■ Appellant contends that the trial court's erroneous calculation of his net monthly income and net monthly expenses is compounded by requiring him to pay child support arrearages. Minn.Stat. § 518.64, subd. 2(c) (1992) states:

a modification of support or maintenance may be made retroactive only with respect to any period during which the petitioning party *has pending* a motion for modification but only from the date of service of notice of the motion on the responding party * * *. (Emphasis supplied.)

According to appellant, respondent served her initial notice of motion and motion upon his former attorney in Minnesota, although the attorney had not represented appellant since 1983. Appellant claims that by the time his former attorney located him, and appellant located an attorney to assist him in this matter, there was little time to prepare a response. However, the record does not support appellant's assertion that he had unusual difficulty in responding to respondent's discovery requests and preparing for the modification hearing. Indeed, appellant's affidavit in this matter was dated August 30, 1991, about five months prior to the hearing. Therefore, the trial court was correct in allowing arrearages back to the date of the initial service of process.

On January 22, 1992, respondent served upon appellant her current notice of motion and motion, which are identical to the documents previously served on July 3, 1991. Appellant claims that respondent's act of serving a second set of documents proves that the first notice of motion and motion was not pending at that time. However, the court would not have required appellant to comply with respondent's discovery requests in November unless the modification served upon him in July was still pending. Further, after the court's November order, respondent served appellant with additional discovery requests in December; appellant responded to these requests in January. There was no error in the trial court's implicit finding that respondent's initial motion was still pending in January.

## III.

■ Appellant also argues that the court erred in modifying his child support pay-

ments due to cost of living increases over the past several years. He argues that cost of living increases have diluted the value not only of respondent's dollars, but also of his, and thus is an irrelevant consideration. However, in *Lenz v. Wergin*, 408 N.W.2d 873, 878 (Minn.App.1987), this court held that the trial court erred in concluding that a 34% increase in the consumer price index had "an equal impact on both parties." In a dispute involving cost of living adjustments, the obligor has the burden of proving that a cost of living adjustment should not be made. *Blomgren v. Blomgren*, 386 N.W.2d 378, 381–82 (Minn.App.1986); Minn.Stat. § 518.641, subd. 1 (1992).

Nine years of inflation have made appellant's child support payments less adequate for his children than they were in 1983. In the meantime, appellant's salary during the 1980's grew substantially. Appellant has failed to meet his burden of proving that inflation during the 1980's harmed him. While the price of goods undoubtedly increased during the 1980's, so did appellant's salary. There was no such benefit for his children.

### IV.

Appellant also argues that the trial court erred in allowing respondent to claim their children as tax exemptions. The trial court based this conclusion on its finding that respondent provides more monetary support for the children than does appellant.

Prior to the 1985 tax year, the parent with custody of a child for the greater portion of the calendar year was considered to have provided over one-half of the child's support and, therefore, was entitled to claim the dependency exemption. 26 U.S.C. § 152(e)(1) (1982). However, the noncustodial parent would take the exemption if: (a) the noncustodial parent provided

at least $1200 of support for the child during the calendar year and (b) the custodial parent failed to establish that he or she provided more support to the child during the calendar year than did the noncustodial parent. 26 U.S.C. § 152(e)(2)(B) (1982).

In 1984, Congress amended section 152 to provide that the custodial parent is automatically entitled to the dependency exemptions except in three instances.[1] None of those exceptions apply here. Thus, though the court's result on this issue was appropriate, its reasoning was not. *See Katz v. Katz*, 408 N.W.2d 835, 839 (Minn.1987) (trial court will not be reversed where it reaches right result for wrong reason). Respondent is entitled to claim the dependency exemption.

### V.

Appellant asks this court to strike from respondent's brief the following sentence as being contrary to the facts: "There is no evidence in the record that appellant has ever been unemployed or his hours decreased." (Respondent's Brief Statement of Facts and Statement of Case, p. 2). The record clearly indicates, and the trial court explicitly found, that appellant's hours were indeed reduced from 40 to 32 per week during late 1991 and early 1992. Thus, appellant's motion is granted.

### DECISION

The trial court's order is affirmed in part, reversed in part, and remanded for a re-calculation of appellant's child support obligation.

Affirmed in part, reversed in part, and remanded.

---

1. The noncustodial parent may claim the dependency exemptions if (1) a multiple support agreement is in effect; (2) a qualified pre–1985 instrument between the parties provides that the noncustodial parent shall be entitled to the exemptions, and that parent provides at least $600 per child per year in support; or (3) the custodial parent signs a written declaration stating he or she will not claim the dependency exemption and the noncustodial parent attaches such written declaration to his or her tax return. 26 U.S.C. § 152(e) (1988); *Babka v. Babka*, 234 Neb. 674, 452 N.W.2d 286, 288 (1990).