**In re the Marriage of Don Brian FULMER, petitioner, Appellant,**

v.

**Cathy L. FULMER, Respondent.**

**No. C6–98–1799.**

Court of Appeals of Minnesota.

May 18, 1999.

Elizabeth M. Pierce, Messinger, Ojile Pierce, P.L.L.P., Minneapolis (for appellant).

Arthur W. Priesz, Jr., Priesz Law, Minneapolis (for respondent).

Considered and decided by KALITOWSKI, Presiding Judge, KLAPHAKE, Judge, and HUSPENI, Judge.

## OPINION

HUSPENI,* Judge

Appellant contests the trial court's use of earning capacity and refusal to consider debt incurred in satisfaction of the parties' stipulated property award in calculating spousal maintenance. Because the trial court did not abuse its discretion, we affirm.

## FACTS

Appellant Don Brian Fulmer and respondent Cathy Fulmer were married in 1975 and had three children during their 20–year marriage. The parties also co-owned Dog House Boarding Kennels, Inc., which operated one boarding kennel and two retail pet stores. In December 1995, the parties entered into a partial Marriage Termination Agreement (MTA). As part of this agreement, appellant assumed approximately $480,000 in debt to pay respondent $306,000 for her share of the family business and to satisfy outstanding marital debts. The parties also relied on a company accountant's business appraisal to project appellant's stipulated future earnings of $210,000 per year. Based on this estimation, they set respondent's spousal maintenance award at $4,750 per month for five years. After commencement of the dissolution trial, the parties resolved the outstanding issues of spousal maintenance, life insurance, and debts that exceeded the agreement reflected in the partial MTA. Thus, no issues remained for the court to resolve. The terms of the MTA and the subsequent agreement were incorporated into the dissolution decree entered in May 1996.

In December 1996, appellant moved to amend his temporary spousal maintenance based on a decrease in the business's income. Three months later, appellant moved to reduce his child support obligations. A referee initially heard these motions and, because he found appellant's income to be significantly less than originally projected by the parties in their MTA, ordered an evidentiary hearing before a district court judge.

During a two-day evidentiary hearing, the trial court compared appellant's initial projected income of $210,000, which was consistent with the parties' 1994 tax return, with (a) appellant's 1995 federal income tax return reporting appellant's income to be $45,901, (b) appellant's 1996 federal income tax return reporting appellant's income to be $93,837, and (c) a projection estimating appellant's 1997 income to be $66,334. Based on these comparisons, the trial court concluded that appellant's income had substantially decreased since the parties' dissolution.

The trial court denied appellant's motion to decrease child support, but reduced maintenance to $2,900 per month for five years.[1] The trial court based this reduction on an estimate of appellant's earning capacity rather than evidence of appellant's actual income. Specifically, the trial court used the 1994 corporate tax return as amended by appellant's accountant and compared the business's $885,370 in gross receipts with appellant's reported gross income of $170,000.[2] This comparison yielded a 19% ratio of gross income to gross receipts, which the trial court applied to the business's 1997 gross revenues of $820,000 to determine appellant's esti-

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

1. The trial court increased this maintenance award to $3,100 per month in a December 29, 1997 order.

2. The trial court reached this figure by adding officer salaries of $36,000, ordinary income of $125,899, and estimated personal expenses paid by the business of approximately $10,-

000. The trial court's estimate of $10,000 in personal expenses is based on evidence that the business paid: (1) $2,000 every summer to maintain the family swimming pool; (2) to install appellant's home septic system and to paint appellant's home window trim; (3) for home lawn service, snow removal, home heating propane, automobile fuel, home insurance, telephone costs, and cleaning supplies; and (4) appellant's property taxes.

mated gross monthly earning capacity of $12,430. The trial court also refused to deduct appellant's debt incurred as part of the parties' MTA from his budget in setting the spousal maintenance award. Appellant's motion for amended findings and conclusions was denied.

## ISSUES

I. Did the trial court abuse its discretion in using earning capacity to determine appellant's spousal maintenance obligation?

II. Did the trial court abuse its discretion in refusing to incorporate appellant's debt into his net income in calculating spousal maintenance?

## ANALYSIS

### I.

■ The standard of review for an appeal from a maintenance award is whether the trial court abused its discretion. *Erlandson v. Erlandson*, 318 N.W.2d 36, 38 (Minn.1982). Before a reviewing court will find an abuse of discretion, a conclusion must be clearly erroneous and against logic and the facts on record. *Rutten v. Rutten*, 347 N.W.2d 47, 50 (Minn.1984). Minn.Stat. § 518.64, subd. 2(a) (1998), permits a reduction in support obligations upon a showing of a substantial decrease in a party's earnings, that makes the original terms unreasonable or unfair. *Giesner v. Giesner*, 319 N.W.2d 718, 719 (Minn.1982); *see also Prange v. Prange*, 437 N.W.2d 69, 70 (Minn.App.1989) (noting trial courts may also modify stipulated maintenance provisions if parties' circumstances have materially changed), *review denied* (Minn. May 12, 1989).

■ Trial courts may use earning capacity to measure income if it is either impracticable to determine an obligor's actual income or the obligor's income is unjustifiably self-limited. *Warwick v. Warwick*, 438 N.W.2d 673, 677 (Minn.App. 1989); *Beede v. Law*, 400 N.W.2d 831, 835 (Minn.App.1987). Earning capacity findings are commonly used when reviewing a self-employed individual's support obligations. *Beede*, 400 N.W.2d at 835; *LeTendre v. LeTendre*, 388 N.W.2d 412, 416 (Minn.App.1986); *see also Ferguson v. Ferguson*, 357 N.W.2d 104, 108 (Minn.App. 1984) (stating "opportunity for a self-employed person to support himself yet report a negligible net income is too well known to require exposition").

■ The trial court here, in a commendably detailed 20–page order containing 45 findings, together with two other orders and a lengthy memorandum responding to motions for amended findings, determined that appellant's income had substantially declined. The court observed, however, that the

> determination of [appellant's] actual net self-employed income is impractical. The Court has devoted *hours and hours* to scouring dozens of financial documents and there is no clear picture of [appellant's] income.

(Emphasis in original.) Nonetheless, appellant argues that the trial court abused its discretion in using estimated earning capacity rather than reported actual income to determine appellant's spousal maintenance obligation. Because the finding that it is impractical to determine appellant's actual net income is not clearly erroneous, we see no abuse of discretion in the district court's use of appellant's earning capacity.

Appellant presented the trial court with an estimated actual income of $66,334 for 1997. This figure, however, was based on unaudited financial records that contain numerous discrepancies. Although these discrepancies can be attributed to a difference in reporting between appellant's and the company accountants' treatment of certain items, they can also be attributed to the poor business skills of appellant, as noted by the trial court. Appellant did not keep invoices, receipts, or bills to monitor the business's cash flow, failed to implement a system for reconciling the busi-

ness's till, and consistently used business funds to cover personal expenses without recording these expenses. Given these facts, the trial court properly concluded that determination of appellant's actual income was impracticable. *See Beede*, 400 N.W.2d at 835 (noting trial court may use earning capacity to measure income if impracticable to determine actual income); *see also Bollenbach v. Bollenbach*, 285 Minn. 418, 428, 175 N.W.2d 148, 155 (Minn. 1970) (stating failure to make full and accurate disclosure of assets and liabilities "justifies inferences adverse to the party who conceals or evades").

The trial court conducted a painstaking review of appellant's voluminous financial records and reached a reasonable estimated earning capacity based on appellant's earning history. *See Warwick*, 438 N.W.2d at 677–78 (extending earnings history analysis to spousal maintenance obligations). The trial court did not abuse its discretion in its formulation of or decision to use earning capacity in its reduction of spousal maintenance from the original $4,750 per month. *Rutten*, 347 N.W.2d at 50 (noting that reviewing court may only find abuse of discretion when trial court reaches "clearly erroneous conclusion that is against logic and the facts on record").

## II.

■ Appellant also argues that in calculating spousal maintenance the trial court abused its discretion in failing to consider the debt appellant incurred as part of the parties' MTA. Our review of the record convinces us that the decision of the trial court on this issue was a sound one. The parties stipulated that appellant would receive full ownership of the business, together with the ability to realize a stipulated $210,000 annual income. In exchange for this full ownership and income-producing ability, appellant was to pay respondent $306,000. The parties also stipulated that appellant would assume an existing debt to his parents in the sum of $223,116. There is

nothing in the record to indicate that appellant would be able to satisfy the property award by any means other than borrowing those funds. He did so by increasing his debt to his parents by $480,-000.

The trial court, in refusing to take this new debt into account when determining appellant's ability to pay child support and maintenance, categorized the debt as personal, not business; that it was not a debt incurred to produce income, but instead a debt incurred to fund a property award. We agree with this categorization.

■ We recognize that expenses incurred solely for the production of income should be considered in full when determining support and maintenance obligations. *See Bartl v. Bartl*, 497 N.W.2d 295, 300 (Minn.App.1993) (concluding trial court abused its discretion in refusing to credit appellant in determining his child support obligation for rental expenses related to work and incurred solely for production of income); *see also* Minn.Stat. § 518.551, subd. 5(d)(2) (1998). We recognize also, as did the trial court, that this debt incurred to fund the property award may, indeed, have the indirect effect of producing income for appellant. Nonetheless, the trial court's refusal to consider indebtedness appellant incurred to satisfy a stipulated property award, when the court determined income available for support and maintenance obligations, is, we believe, consistent both with the principles of equity and with caselaw. Reversing the trial court on this issue would, we conclude, effectively permit appellant to succeed in a collateral attack on the stipulated dissolution decree. Reversal would also subject respondent to unwarranted and unintended consequences of her agreement to divest herself of one-half ownership of the parties' business interest; recognizing appellant's debt and reducing his available income accordingly would very probably reduce respondent's award of spousal maintenance also, causing her to partially finance payment of her property award.

# DECISION

The trial court properly considered appellant's earning capacity rather than actual income in reducing his spousal maintenance obligations. The trial court also properly refused to consider the debt incurred by appellant in satisfaction of his stipulated property award in calculating income available for payment of support and maintenance.

**Affirmed.**

KLAPHAKE, Judge (dissenting)

I respectfully dissent. In my view, the trial court's decision ignores the realities of appellant's financial condition and fails to properly consider whether he has the ability to pay the amount of maintenance ordered. *See Erlandson v. Erlandson*, 318 N.W.2d 36, 39–40 (Minn.1982) (basic issue when determining amount of maintenance is recipient's need balanced against obligor's financial condition). These deficiencies render the court's decision "against logic and the facts on record." *Rutten v. Rutten*, 347 N.W.2d 47, 50 (Minn.1984) (definition of abuse of discretion standard). Thus, for the following reasons, I would reverse and remand to the trial court to redetermine appellant's income, resources, and ability to pay.

While imputation of income may be appropriate, the method used to compute the imputed income was improper. Minn.Stat. § 518.551, subd. 5b(d) (1998) defines imputed income for child support purposes as "the estimated earning ability * * * based on the parent's prior earnings history * * *." Neither case law nor logic compels some other definition for maintenance. Yet, the trial court based its imputation of income for the calendar year 1997 by applying a ratio of 1994 gross receipts to gross profits. Only that single year ratio was used, and no similar ratios were determined for years before or after 1994. In addition, 1994 was a pre-dissolution year when both spouses worked as key people in the business. Nothing in the record supports the proposition that 1994 was a typical year or in some way represented earnings history. Thus, based on the record, imputation of income for 1997 derived solely on a 1994 ratio constitutes an abuse of discretion.

The amount of maintenance awarded is also improper because the trial court refused to give any consideration to appellant's debt. Appellant assumed the parties' debt of $210,000 and to obtain full ownership of the dog grooming business previously owned by appellant and respondent, paid respondent $306,000 by increasing his debt to $480,000. The trial court simply ignored the debt by categorizing it as a personal and non-income producing debt. In my view, that categorization was erroneous.

First, it defies logic to say that none of appellant's debt was incurred to produce income. It is not enough to say, as does the majority, that this debt may have an indirect effect on producing income. In fact, appellant owned one-half of the business and was entitled to one-half of its income before he incurred the increased debt. He now owns all of the business and has access to all of the income by reason of the additional debt. It is the total income derived from this business that respondent wishes to be considered in determining appellant's ability to contribute to her support. Without question, a portion of appellant's business income is directly related to the debt he incurred to purchase the second half of the business.

Second, it also defies logic to conclude that none of the debt, not even the interest, affects appellant's ability to pay maintenance. If appellant is to service this debt, his available income to pay maintenance is diminished. A $480,000 debt incurred to buy a portion of a business that produces income can hardly be dismissed as something that does not affect appellant's financial condition and thus his available resources for maintenance. *See Erlandson*, 318 N.W.2d at 39–40; *cf. Bartl v. Bartl*, 497 N.W.2d 295, 300 (Minn.App.

**216**

1993) (in calculating income for purposes of child support, district court abused its discretion in failing to credit a party's legitimate business expenses incurred in the production of income).

Finally, I reject, as against logic and sound policy, the argument that any recognition of appellant's debt as reducing his ability to pay maintenance causes respondent to partially finance her property award. Whatever validity such an argument has as to property settlements generally, it has none here. Generally, a debt incurred for a property settlement recognizes that the person incurring the debt received a disproportionately greater property award. The debt represents assets that, at the debtor's option, can be liquidated, thereby extinguishing the debt. Upon such a sale, the income of the maintenance obligor would be unaffected. Here, however, if the asset represented by the debt is liquidated, to wit: the business, the source of income of the maintenance obligor, will be lost or substantially diminished. So long as respondent wants the entire business income to be considered the source of her maintenance award, the trial court must also consider the debt. The trial court's failure to do so is an abuse of discretion.

I would reverse and remand to (1) recompute imputed income based on a full earnings history, (2) equitably consider the impact of appellant's debt on his ability to pay maintenance, and (3) redetermine the amount of the maintenance award.