*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1133**

In re the Marriage of:
Deka Haji Diriye, petitioner,
Respondent,

vs.

Adam Jelle Jilacow,
Appellant.

**Filed January 4, 2016
Affirmed
Johnson, Judge**

Hennepin County District Court
File No. 27-FA-13-5518

Deka Haji Diriye, Bloomington, Minnesota (pro se respondent)

Christopher O. Obasi, Obasi Law Office, Brooklyn Center, Minnesota (for appellant)

Considered and decided by Cleary, Chief Judge; Connolly, Judge; and Johnson, Judge.

# U N P U B L I S H E D   O P I N I O N

**JOHNSON**, Judge

Deka Haji Diriye and Adam Jelle Jilacow were married for approximately 11 years before they divorced. The district court ordered Jilacow to pay temporary spousal maintenance to Diriye. On appeal, Jilacow challenges the award of temporary spousal maintenance on several grounds. We affirm.

## FACTS

Jilacow and Diriye were married in 2003 in South Africa. For the first three years of their marriage, Diriye lived in Minnesota while Jilacow lived in South Africa. After Jilacow moved to Minnesota in 2006, the parties lived together until they separated in April 2013. Diriye petitioned for dissolution in August 2013. The couple does not have any children together. The case went to trial in March 2014 on two issues: the division of property and debts and Diriye's request for spousal maintenance.

At the time of trial, Diriye was 50 years old. She has a limited educational background. She attends English-as-a-second-language classes in the mornings and works in the evenings. She has been employed for four years as a janitor, working approximately 24 hours per week, earning $9.50 per hour. The district court found that Diriye's gross monthly income is $980. She receives a housing subsidy and assistance from food shelves as well as financial assistance from family and friends. She plans to find a better job when she is able to speak English more fluently.

Diriye sought to prove that her reasonable monthly living expenses are $1,873. The district court reduced the claimed amounts of some expense categories (food, medical insurance, housing, and entertainment), eliminated another category that was not well defined, and found that her reasonable monthly living expenses are between $1,470 and $1,495. Given the district court's finding that Diriye's monthly income is $980, Diriye's monthly deficit would be between $490 and $515.

At the time of trial, Jilacow was 52 years old. He has been a self-employed truck driver for at least five years. His income from self-employment was disputed at trial and

remains an issue on appeal. Jilacow did not introduce any documentary evidence to prove the amount of his income from self-employment. The district court determined his income by relying on the couple's joint tax returns for 2010, 2011, and 2012, which were introduced into evidence by Diriye. Their Schedule C (Profit or Loss From Business) for 2010 shows that Jilacow had gross receipts of $97,200 and expenses of $82,597, resulting in a profit of $14,603. Their Schedule C for 2011 shows gross receipts of $207,383 and expenses of $192,553, resulting in a profit of $14,830. And their Schedule C for 2012 shows gross receipts of $153,532 and expenses of $145,791, resulting in a net profit of $7,741. Jilacow did not introduce any evidence to justify the business expenses he claimed on the Schedule C forms. He introduced some bank statements, but those statements do not indicate which distributions from the bank account reflect business expenses. The district court reduced Jilacow's claimed business expenses to account for reimbursed food expenses and personal transportation costs. The district court also reduced Jilacow's claimed depreciation expenses. After making those reductions, the district court averaged Jilacow's profit over the three-year period for which tax records are available and found that his gross income is $34,455 per year or $2,871 per month.

Jilacow made a pretrial disclosure that his monthly personal budget is $1,520, but he sought to prove at trial that his reasonable monthly expenses are $2,910. The district court relied on the budget that he disclosed before trial and reduced the amounts of several expense categories (food, clothing, and telephone), eliminated a category described only as "miscellaneous," and found that his reasonable monthly living expenses

3

are $1,075.  Given the district court's finding that Jilacow's monthly income is $2,871, Jilacow's monthly surplus would be approximately $1,796.

Diriye sought spousal maintenance of $1,500 per month.  The district court considered the statutory factors and ordered Jilacow to pay Diriye temporary spousal maintenance for five years, in monthly amounts of $600 for the first three years and $400 for the subsequent two years.  Jilacow appeals.

## D E C I S I O N

Jilacow argues that the district court erred by awarding temporary spousal maintenance to Diriye.  He challenges some of the district court's findings of fact and some aspects of its analysis of the relevant factors as well as the ultimate decision to award temporary spousal maintenance.

A district court may award spousal maintenance if it finds that one of the parties either

> (a)    lacks sufficient property, including marital property apportioned to the spouse, to provide for reasonable needs of the spouse considering the standard of living established during the marriage, especially, but not limited to, a period of training or education, or
>
> (b)    is unable to provide adequate self-support, after considering the standard of living established during the marriage and all relevant circumstances, through appropriate employment, or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.

Minn. Stat. § 518.552, subd. 1 (2014).  If the district court finds that one of these conditions exists, it may award spousal maintenance "in amounts and for periods of time,

4

either temporary or permanent, as the court deems just, without regard to marital misconduct, and after considering all relevant factors." *Id.*, subd. 2. The "relevant factors" are the financial resources of the spouse seeking maintenance and the spouse's ability to provide for his or her needs independently, the time necessary to acquire education to find appropriate employment, the standard of living established during the marriage, the length of the marriage, any loss of employment opportunities during the marriage, the age and health of the recipient spouse, the resources of the spouse from whom maintenance is sought, and the contribution and economic sacrifices of a homemaker. *Id.*, subd. 2(a)-(h); *see also Kampf v. Kampf*, 732 N.W.2d 630, 633-34 (Minn. App. 2007), *review denied* (Minn. Aug. 21, 2007). No single factor is dispositive. *Kampf*, 732 N.W.2d at 634. In essence, the district court balances the recipient's needs against the obligor's ability to pay. *Prahl v. Prahl*, 627 N.W.2d 698, 702 (Minn. App. 2001) (citing *Erlandson v. Erlandson*, 318 N.W.2d 36, 39-40 (Minn. 1982)).

## A. Jilacow's Income

Jilacow argues that the district court erred by finding that his monthly income is $2,871. This court applies a clear-error standard of review to a district court's findings of fact concerning spousal maintenance. *Maiers v. Maiers*, 775 N.W.2d 666, 668 (Minn. App. 2009).

For purposes of spousal maintenance, the income of a self-employed person is defined by statute as "gross receipts minus costs of goods sold minus ordinary and necessary expenses required for self-employment." Minn. Stat. § 518A.30 (2014); *see also Lee v. Lee*, 775 N.W.2d 631, 635 n.5 (Minn. 2009) (holding that definition of gross

5

income in section 518A.29 applies to calculations of spousal maintenance). Thus, by definition, business expenses that are not ordinary and necessary do not reduce gross receipts. *See id.* "The person seeking to deduct an expense, including depreciation, has the burden of proving, if challenged, that the expense is ordinary and necessary." *Id.*

Jilacow challenges the district court's findings concerning his income in general ways, without referencing any particular part of the district court's calculation. For example, he contends that the district court improperly "imputed" income to him. In determining the income of a spousal-maintenance obligor who is self-employed, a district court may rely on the person's earning capacity "if it is either impracticable to determine [the] obligor's actual income or the obligor's income is unjustifiably self-limited." *Fulmer v. Fulmer*, 594 N.W.2d 210, 213 (Minn. App. 1999). The district court acknowledged the "earning capacity" method described in *Fulmer* but did not actually apply the method. The district court did not find that it is "impracticable to determine [Jilacow's] actual income" or that Jilacow had "unjustifiably self-limited" his income, and the district court did not attempt to determine Jilacow's earning capacity. *See id.* Rather, the district court analyzed the available evidence and made findings concerning Jilacow's actual income. The district court did so by accepting the evidence concerning Jilacow's gross receipts, reducing Jilacow's claimed business expenses, and averaging the adjusted profit numbers over the three-year period for which tax returns were introduced into evidence. Thus, Jilacow's contention that the district court improperly relied on his earning capacity fails because the district court simply did not do so. Furthermore, the district court's decision to reduce Jilacow's claimed business expenses

6

was not clearly erroneous given Jilacow's failure to introduce any evidence to support the claimed expenses. "On appeal, a party cannot complain about a district court's failure to rule in [that party's] favor when one of the reasons it did not do so is because that party failed to provide the district court with the evidence that would allow the district court to fully address the question." *Eisenschenk v. Eisenschenk*, 668 N.W.2d 235, 243 (Minn. App. 2003), *review denied* (Minn. Nov. 25, 2003).

Jilacow also contends that the district court erred by not acknowledging that he was unable to introduce exhibits to prove his income because Diriye withheld his business records from him. The district court did not make such an acknowledgment. But Jilacow never raised the issue with the district court. For that reason, Jilacow has failed to preserve the argument for appellate review. *See Butt v. Schmidt*, 747 N.W.2d 566, 578 (Minn. 2008) (citing *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988)).

Thus, the district court did not err in its findings concerning Jilacow's income.

**B.     Statutory Factors**

Jilacow argues that the district court erred by "disregarding" the factors specified in section 518.552, subdivision 2. This court applies an abuse-of-discretion standard of review to a district court's consideration of the statutory factors concerning spousal maintenance. *Stich v. Stich*, 435 N.W.2d 52, 53 (Minn. 1989); *Erlandson*, 318 N.W.2d at 38.

The district court's order contains a thorough discussion, with a clear heading, of all statutory factors, except (e) and (h). Subdivision 2(e) concerns "the loss of earnings, seniority, retirement benefits, and other employment opportunities forgone by the spouse

7

seeking spousal maintenance." Minn. Stat. § 518.552, subd. 2(e). The district court apparently was of the view that this factor does not apply. Jilacow does not identify any evidence that is relevant to this factor and does not explain how the absence of any analysis of this factor worked to his disadvantage.

Subdivision 2(h) concerns "the contribution of each party in the acquisition, preservation, depreciation, or appreciation in the amount or value of the marital property, as well as the contribution of a spouse as a homemaker or in furtherance of the other party's employment or business." *Id.*, subd. 2(h). Again, the district court apparently was of the view that this factor does not apply. Jilacow states that the parties' only significant asset was the truck that he used in his self-employment, and he further states that the truck was purchased during the marriage using proceeds of an insurance claim on another vehicle. Jilacow does not contend that he had a greater role in the acquisition of the insurance proceeds or the other vehicle. Accordingly, he has failed to demonstrate that the absence of any analysis of subdivision 2(h) is reversible error.

Jilacow also contends that the district court misanalyzed factors (a), (b), (c), (d), (f), and (g). With respect to each of those factors, Jilacow simply presents reasons why a factfinder should have made different findings. Jilacow does not contend that the district court's findings concerning the statutory factors are not based on evidence in the record. In short, Jilacow has not demonstrated that the district court's analysis of the statutory factors is erroneous. "That the record might support findings other than those made by the [district] court does not show that the court's findings are defective." *Vangsness v. Vangsness*, 607 N.W.2d 468, 474 (Minn. App. 2000).

8

Thus, the district court did not err in its analysis of the statutory factors or in its findings concerning those factors.

**C.     Award of Temporary Spousal Maintenance**

Jilacow argues that the district court erred in its ultimate decision by awarding Diriye temporary spousal maintenance. This court applies an abuse-of-discretion standard of review to a district court's determination that spousal maintenance is appropriate and in the amount and duration of an award of spousal maintenance. *See Dobrin v. Dobrin*, 569 N.W.2d 199, 202 (Minn. 1997).

Jilacow contends that the district court's decision to award temporary spousal maintenance is erroneous because Diriye is capable of supporting herself. He asserts that she has worked two jobs simultaneously in the past and that she does not have any child-raising responsibilities. The district court's findings of Diriye's income and living expenses show that she is not able to support herself at present because she would have a monthly deficit of approximately $500. In analyzing the second statutory factor, the district court referred to Diriye's "present educational efforts," noted that she "potentially has the ability to increase her work hours," and concluded that she "has the ability to become self-supporting in three (3) to five (5) years." We interpret this part of the district court's order to approve of Diriye's part-time work schedule as a means of allowing her to improve her future employability. "An award of temporary maintenance is based on the assumption that the party receiving the award not only should strive to obtain suitable employment and become self-supporting but that he or she will attain that goal." *Maiers*, 775 N.W.2d at 609 (affirming award of temporary spousal maintenance)

9

(quotation omitted).  In light of these circumstances, it was not an abuse of discretion for the district court to award temporary spousal maintenance.

Jilacow also contends that the district court's decision to award temporary spousal maintenance is erroneous because Diriye seeks an award of spousal maintenance for reasons related to the termination of their relationship.  Specifically, Jilacow asserts that Diriye seeks spousal maintenance because he "abandoned" her and caused her "psychological pain."  Jilacow supports this argument only by citing the trial transcript.  The district court's order does not refer to the reasons for the termination of the parties' relationship, and there is no indication in the record that the district court considered that issue when making its award of temporary spousal maintenance.

In sum, the district court's award of temporary spousal maintenance appears to be a reasonable resolution of the parties' dispute.  Spousal maintenance in the monthly amount of $600 will cover Diriye's monthly deficit while still leaving Jilacow with a monthly surplus.  Thus, the district court did not err by awarding temporary spousal maintenance to Diriye.

**Affirmed.**