In re the Marriage of Jean Ann
ERICKSON, Respondent,

v.

Lawrence Gregory ERICKSON,
Petitioner, Appellant.

No. C7-84-1770.

Supreme Court of Minnesota.

April 11, 1986.

Dennis L. Briguet, West St. Paul, for appellant.

Paul M. Nesvig, St. Paul, for respondent.

AMDAHL, Chief Justice.

This case involves substantially the same issues we addressed in the companion case of *Moylan v. Moylan*, 384 N.W.2d 859 (Minn.1986) (filed herewith). Because of our holding in *Moylan* that the child support guidelines of Minn.Stat. § 518.551, subd. 5 (1984), apply in all cases, including modification proceedings, we need not discuss those matters here.[1] Appellant does, however, raise some issues which merit our attention.

The marriage of Lawrence Erickson and Jean Erickson was dissolved in October 1978. The dissolution decree, based upon the stipulation of the parties, awarded Jean custody of the parties' three minor children and set child support at $300 per child per month. It also required Lawrence to maintain, among other things, health insurance for the children and life insurance on his own life in the amount of $355,000. This award was based upon the trial court's finding that in 1978 Lawrence had a gross income of $40,000 as a physician and that Jean grossed $3,000 as a bookkeeper.[2]

On May 17, 1984, Jean filed a motion to modify the child support award and to find Lawrence in contempt of court for failing to maintain life and health insurance as required by the court's decree. Because the health coverage procured by Lawrence could only be used in Hastings, Minnesota, Jean was forced to purchase separate coverage on her own since she lived in St. Paul with the children. There is no evidence in the record, however, other than a statement to the court by Jean's attorney, as to the cost of this insurance to Jean.

Jean and Lawrence each remarried. Jean's new husband earned $28,000 per year and Jean's annual income was $11,750. In November 1983, her new husband started his own business and eventually both he and Jean quit their former jobs to devote their full time to the new venture. This business lost money in 1983 and was only breaking even at the time this motion was heard in June 1984. On June 13, the trial court issued an order modifying the original decree after finding a drastic increase in Lawrence's gross income to approximately $90,000 per year in the years 1982–83. It held that this constituted a significant change in circumstances entitling the minor children to increased support. Relying on the child support guidelines, the court increased the total child support amount from $900 to $1,420 per month, or 30% of Lawrence's monthly net income.

On June 22, 1984, the trial court issued a second order finding Lawrence in contempt of court for failing to comply with the insurance requirements of the original decree. The order provided that Lawrence could purge himself of the contempt by: (1) obtaining $155,000 in life insurance coverage on his life, naming the three children as beneficiaries; (2) paying $50 to Jean each month for the establishment of a trust fund for each child (this was in lieu of the additional $200,000 life insurance coverage required by the original decree); (3) reimbursing Jean $1,500 for the children's health insurance; (4) paying $500 in attorney fees; and (5) either obtaining medical coverage for the children at the SHARE Clinic in St. Paul or paying Jean the cost of maintaining her policy. On July 11, Lawrence's attorney appeared before the trial court and stated that Lawrence had made the appropriate arrangements to ensure in-

---

1. In the *Moylan* case, we noted that the 1986 Minnesota Legislature recently passed major revisions in the marriage dissolution laws, including changes in certain provisions concerning child support. *See* Act of March 24, 1986, ch. ——, 1986 Minn. Laws ——. The interpretation of the statutes as amended, however, was not before us and we declined to comment on the effect, if any, of these changes.

2. A review of the couple's 1978 tax returns, however, reveals that the gross income figures were closer to $64,000 for Lawrence and $4,600 for Jean. Note also that the child support guidelines were not effective in 1978.

surance coverage and he paid into court the $1,500 insurance reimbursement. The trial court noted on the record that Lawrence had substantially complied with the purgative provisions of the contempt order and took no further action on the matter.

Lawrence petitioned the Court of Appeals for discretionary review, first of the modification order and later of the contempt order. Both petitions were denied since judgment had not been entered on the modification order and initial constructive civil contempt orders are not appealable. It found no compelling reason to grant discretionary review. An amended judgment and decree was entered on August 28, 1984, incorporating the demands of both the modification order and the contempt order into the judgment and decree. Lawrence appealed from that judgment, alleging:

(1) The trial court erred in finding him in contempt with respect to the medical insurance payments since Jean gave no specific grounds for her complaint;

(2) A trial court may not modify the terms of a dissolution decree through the exercise of its contempt powers;

(3) The trial court erred by ordering child support modification based solely upon changes in the parties' incomes;

(4) The trial court erred in interpreting prior Court of Appeals' decisions as requiring utilization of the child support guidelines in modification proceedings;

(5) The trial court erred in setting the modified support amount by failing to consider that Lawrence must now support two children by his second marriage in addition to the three from his previous marriage; and

(6) There was insufficient evidence to support the court's findings of fact.

The Court of Appeals disagreed with each of Lawrence's contentions and, in fact, reversed and remanded the case to the trial court ordering an award of 35% of Lawrence's net income rather than 30%. It held the trial court improperly deviated from the guidelines without making express findings justifying the deviation.

*Erickson v. Erickson*, 367 N.W.2d 685, 687 (Minn.App.1985). It further held that the trial court properly utilized the child support guidelines in determining the modified amount and that its use of its contempt power was within its discretion. *Id.* We granted Lawrence's petition for further review on all issues and now affirm in part and reverse in part the decision of the Court of Appeals.

1. For reasons stated in our *Moylan* opinion, we affirm the Court of Appeals holding that the child support guidelines were properly applied in this modification proceeding. However, we hold that the trial court's findings were inadequate to support the modification and we remand the case for further consideration. The trial court's findings merely state that Lawrence's gross income has "more than doubled during a five-year period since the dissolution and is a significant change in circumstances entitling the minor children to increased support." Although Minn.Stat. § 518.64, subd. 2(1) (Supp.1985), lists "substantially increased or decreased earnings of a party" as one of the factors on which a modification may be based, the trial court made no finding that Lawrence's increased income makes the terms of the original decree "unreasonable and unfair" as is required by the statute. Additionally, the findings do not reveal whether the trial court considered the needs of the children in reaching its conclusion. *See* Minn.Stat. § 518.64, subd. 2(2) (Supp.1985).

The Court of Appeals affirmed the trial court with respect to this issue, observing that the record contains ample evidence to support a conclusion that Lawrence's increase in income rendered the terms of the original decree unreasonable and unfair. It further noted that the record contains evidence of the needs of the children; therefore, the modification was justifiable. We believe that the trial court, however, must make these observations in its findings of fact. We cannot stress enough the importance of having findings of fact that demonstrate the trial court actually did take all relevant factors into consideration.

This will help prevent blind adherence to the guideline amounts.

▮ Lawrence also contends that the trial court and Court of Appeals erred in setting the child support award because both courts, in determining the appropriate amounts of support under the guidelines, failed to consider that Lawrence now has two additional children by his later marriage to support. We affirm the Court of Appeals on this issue. Children by a subsequent marriage, while relevant to a trial court's decision, are not to be factored into the child support guideline tables in Minn. Stat. § 518.551, subd. 5 (1984).

▮ 2. We also affirm the Court of Appeals holding that the trial court did not abuse its discretion in utilizing its contempt power to enforce the child support order. The purpose of the contempt power is to provide the trial court with the means to enforce its orders. *See Hopp v. Hopp,* 279 Minn. 170, 174, 156 N.W.2d 212, 216 (1968). This power gives the trial court inherently broad discretion to hold an individual in contempt but only where the contemnor has acted "contumaciously, in bad faith, and out of disrespect for the judicial process." *Minnesota State Bar Association v. Divorce Assistance Association, Inc.,* 311 Minn. 276, 284, 248 N.W.2d 733, 740 (1976). As we observed in *Hopp:*

> If the duty is one specifically defined by a proper decree of the court, it must be free to compel performance by methods which are speedy, efficient, and sufficiently flexible to meet the problem at hand. Particularly in support cases, the proper discharge of the judge's responsibilities should not be frustrated by delay and formalism.

*Hopp,* 279 Minn. at 174, 156 N.W.2d at 216.

The question raised here is whether the trial court may still enforce the terms of the original contempt order. The trial court did not expressly vacate that order when it found that Lawrence had essentially complied with the purgative provisions of the order. It did, however, incorporate the provisions of this contempt order into the amended judgment and decree issued August 28, 1984. Accordingly, we hold that if Jean wishes to move the court to find Lawrence in contempt, she should do so on the basis of alleged violations of the amended decree.

Affirmed in part, reversed in part, and remanded.

YETKA and KELLEY, JJ., concur specially.

YETKA, Justice (concurring specially).

I concur in the opinion of the court, but re-emphasize the points I raised in the companion case of *Moylan v. Moylan,* 384 N.W.2d 859 (Minn.1986), concerning the application of the child support guidelines to cases such as this which do not involve public assistance:

a. While the guidelines apply to all custodial cases, they are only guidelines and are not mandatory.

b. Each parent can be an obligor towards his or her children.

c. All the resources and income of each parent can be considered in arriving at the total support for the child or children.

d. The order for support should be drawn in such a way that the custodial parent not incur legal liability for an accounting to the child or children being supported.

e. The court should, in every case, draft findings and reasons for its support order.

KELLEY, Justice (concurring specially).

I join in the special concurrence of Justice YETKA.