In re the Marriage of: Renae Cheryl
BOCK, a/k/a Renae Cheryl Jeno,
Petitioner, Appellant,

v.

Bruce William BOCK, Respondent.

No. C4–93–129.

Court of Appeals of Minnesota.

Sept. 21, 1993.

Catherine Brown Furness, Owatonna, for appellant.

Tom Krause, Waseca, for respondent.

Considered and decided by FORSBERG, P.J., and CRIPPEN and NORTON, JJ.

## OPINION

CRIPPEN, Judge.

Appellant contends the trial court erred as a matter of law in calculations leading to the

denial of her motion for an upward modification of the trial court's 1979 child support award. The case requires our review of law on the vexing child support topic of allowances for later born children.

## FACTS

The marriage of the parties was dissolved in March 1979. Custody of a son, now 16, was placed with appellant Renae Bock, now Renae Jeno. The judgment determined an obligation of respondent Bruce Bock to pay child support of $175 per month.

Appellant challenges the trial court's denial of her August 1992 motion to increase the child support award. The record shows that both parties have remarried. Respondent and his current wife have two young children.

Appellant was entitled to have the child support obligation modified if she succeeded in showing a substantial change in the circumstances of the parties or the child that makes the 1979 award "unreasonable and unfair." Minn.Stat. § 518.64, subd. 2(a) (1992). Unfairness is rebuttably presumed

> if the application of the child support guidelines in section 518.551, subdivision 5, to the current circumstances of the parties results in a calculated court order that is at least 20 percent and at least $50 per month higher or lower than the current support order.

*Id.* Respondent earned approximately $700 per month in 1979. The trial court found that he earned $1396 per month in 1992. According to the child support guidelines for one child, respondent's 1992 earnings would require a child support contribution of $349 (25% of earnings), an amount 100 percent higher than ordered in 1979. Minn.Stat. § 518.551, subd. 5(a) (1992) (Minnesota child support guidelines).

The trial court found that appellant failed in her burden to show the prior award was now unfair. Adopting an argument of respondent, the court found that respondent's current guidelines obligation for his eldest child would be $163, less than the amount of his current obligation. This sum represents one-third of $489, the guidelines obligation (35 percent) for three children on respondent's earnings. *Id.* The court made no findings suggesting that respondent rebutted the statutory presumption, if it applied, although respondent's affidavit stated that he was "barely able to make ends meet by paying child support at the rate of $175.00 per month."

Appellant also maintains that modification of the support order is warranted because of increased needs of the child and a decrease in her earnings. Perhaps in response to this contention, the trial court stated a general conclusion that appellant "failed to prove by a preponderance of the evidence any of the (statutory modification) factors."

## ISSUE

Did the trial court err in assessing the child support award that would be appropriate for respondent's income?

## ANALYSIS

### A. Presumptive Unfairness

Appellant's contentions focus on the rebuttable presumption of Minn.Stat. § 518.64, subd. 2(a). To determine whether the presumption applies, the trial court must make an "application of the child support guidelines * * * to the current circumstances of the parties." *Id.; see* Minn.Stat. § 518.551, subd. 5. Appellant contends the trial court erred as a matter of law in its failure to make a proper assessment of the statutory presumption in the circumstances of this case.[1]

---

1. The trial court found that respondent's current guidelines obligation for his eldest child would be $163 per month, but the court used this information only to make a general judgment about the continued reasonableness of the original award. The court did not directly address the rebuttable presumption of Minn.Stat. § 518.64, subd. 2(a). This omission may trace to the fact that the presumption was not asserted in trial court proceedings. We must address the presumption because "it is the responsibility of appellate courts to decide cases in accordance with [existing] law." *State v. Hannuksela,* 452 N.W.2d 668, 673 n. 7 (Minn.1990); *see Greenbush State Bank v. Stephens,* 463 N.W.2d 303, 306 n. 1 (Minn.App.1990) (same), *pet. for rev. denied* (Minn. Feb. 4, 1991).

■ To determine a child support award, it is appropriate for the trial court to consider the obligor's burden to support subsequent children. *Erickson v. Erickson,* 385 N.W.2d 301, 304 (Minn.1986); *Mark v. Mark,* 248 Minn. 446, 450–51, 80 N.W.2d 621, 624–25 (1957). We have recognized this principle in several prior holdings. *See Hayes v. Hayes,* 473 N.W.2d 364, 365 (Minn.App.1991) (citing cases). But it is established with equal force that the needs of subsequent children cannot be factored into a guidelines calculation. *Erickson,* 385 N.W.2d at 304. *See Hayes,* 473 N.W.2d at 365–67 (discussing our applications of *Erickson* ).

■ Just as other child support burdens may enter into determining an obligation, they may enter into assessing the unfairness of a prior award. But the trial court cannot factor the subsequent children into the tentative guideline calculation now required to determine if appellant's prior obligation was presumptively unfair. *See* Minn.Stat. § 518.-64, subd. 2(a). Because the facts of this case require the presumption of unfairness, the case must be remanded for further proceedings to determine whether the presumption has been rebutted. A successful rebuttal, establishing the continuing fairness of the prior award, would justify denial of appellant's motion. But if the presumption is not adequately rebutted, the court must proceed to determine the appropriate amount of a modified obligation.

### B. Rebuttal of Presumptive Unfairness

■ To weigh rebuttal evidence, the trial court must evaluate appellant's proof of changes in her circumstances and in those of the child, and more thoroughly assess respondent's circumstances. On the rebuttal considerations, trial court findings should be made, whether or not modification is ordered. *See Hedburg v. Hedburg,* 412 N.W.2d 43, 46 (Minn.App.1987).

**2.** We have previously noted certain "unusual circumstances" which suggest possible exceptions to the rule. *See D'Heilly,* 428 N.W.2d at 136 (suggesting substantial income as an unusual circumstance); *Hayes,* 473 N.W.2d at 366 (suggesting "per capita" economy may be present when multiple children live in the same household).

Respondent argues that the trial court can be affirmed because of undisputed evidence that he has no ability to pay more than $175 per month. This contention has no merit. The trial court made no finding on respondent's ability to pay. And respondent's evidence on expenses includes family expenses without indicating whether a portion of those expenses are paid by respondent's wife, who earns more than respondent.

■ Respondent's argument for an affirmance is also defeated by our previous holdings that, absent unusual circumstances, the contribution recognized for each subsequent child of the obligor should not exceed the award now being established or modified for each prior child. *Hayes,* 473 N.W.2d at 366; *D'Heilly v. Gunderson,* 428 N.W.2d 133, 135–6 (Minn.App.1988).[2] These holdings are premised on deference in the guidelines to the earliest support need. Minn.Stat. § 518.-551, subd. 5(a); *D'Heilly,* 428 N.W.2d at 136. Respondent has not identified the amount of his expenses that constitute a contribution for the support of children now in his household. Thus, the trial court has made no finding on this factor. Without these findings, together with others already discussed, the question of whether respondent has rebutted the presumption that his existing support obligation is unfair cannot be lawfully determined.

### C. Calculation of Support Obligation

What we have said resolves the question of whether appellant enjoys a rebuttable presumption favoring modification in the circumstances of this case, and partially addresses the determination of whether the presumption has been rebutted. But there is inescapable merit in appellant's argument that remand of the case does a disservice to the trial court and the parties if we do not state permissible approaches in considering the burden of an obligor for the support of later-born children.[3]

**3.** The issue first arises in this case in assessing whether respondent has rebutted the presumption that the 1979 award is now unreasonable and unfair. If a modification is to occur, similar considerations govern the calculation of a new award. In calculating a new award, findings are required by statute for a guidelines deviation.

The remand is affected by two settled principles:

■ a. As we have held once again, *Erickson* precludes factoring the needs of subsequent children into a guidelines calculation. But this rule cannot be considered an instruction on how the guidelines are employed where the support obligor has children in multiple households. Instead, the rule determines whether the guidelines can be used at all in cases like this one. If the statutory guidelines are applied to determine an obligation, the calculation must be made without regard for needs of children of a later union of the parent. If a smaller award is considered, the determination must be premised on factors identified by statute for a guidelines deviation. Minn.Stat. § 518.551, subd. 5(b), (h).

■ b. In the event of deviation from the guidelines in order to consider the needs of subsequent children, the court normally must not favor subsequent children over respondent's first child. *Hayes,* 473 N.W.2d at 366; *D'Heilly,* 428 N.W.2d at 135–36.

Appellant contends that these established doctrines leave unanswered the more difficult question of what calculations are to occur if the trial court should deviate from the guidelines to consider the needs of subsequent children. We briefly commented on this topic in *Hayes,* noting the merit in a process of determining the obligor's ability to pay and then apportioning the obligation consistent with the principle of avoiding a preference for subsequent children. *Hayes,* 473 N.W.2d at 367.

■ The deviation process must involve comparing contributions to all children of the obligor. Thus, (1) the trial court has to find the obligor's total ability to contribute to dependent children, taking into account the obligors income and reasonable expenses exclusive of child care; (2) the court should then find the total needs of all of the obligor's children, and if these needs are less than the obligor's ability to pay, the needs may become the obligor's maximum child care contribution; (3) the court should make specific findings on the needs of the child or children benefiting from the current support determination; and (4) the court must exercise discretion to fairly determine the current support obligation and the contribution left available for other children, keeping in mind the general standard that the obligation now determined normally should be in an amount at least equal to the contribution for a subsequent child.

■ In these deviation determinations, the obligor's reasonable expenses must be reduced as appropriate to take into account contributions to those costs by others who share the obligor's current household.[4] Likewise, when examining the needs of subsequent children, the trial court must reduce those amounts as appropriate to take into account the contributions to those needs by another parent of the children. Finally, to assess an obligor's expenses exclusive of child care, separate from the needs of subsequent children now in the obligor's household, the trial court must reasonably apportion between the parent and children the expense for shared benefits, such as housing, transportation, etc.

We have heretofore refrained from concluding that the guidelines could play no part whatsoever in these deviation calculations. *Hayes,* 473 N.W.2d at 367; *see D'Heilly,* 428 N.W.2d at 136 (implies possible calculation of contribution for subsequent children, which, if treated as a reduction of the obligor's resources, produces a guidelines benefit for prior children in at least an amount equal to the contribution for subsequent children). But all conceivable uses of the guidelines involve the process of factoring prohibited by *Erickson,* and they distort the guidelines scheme enacted by the legislature.

Minn.Stat. § 518.551, subd. 5(h) (upon deviating, trial court to make "written findings giving the reasons for the deviation," with reference to statutory deviation factors, and stating "how the deviation serves the best interest of the child").

4. This concept should not be confused with the statutory rule that a spouse's income is not a resource for paying child support. Minn.Stat. §§ 518.551, subd. 5(a); 518.64, subd. 2(b)(1). The spouse's resources are inherently involved in assessing which expenses are the burden of the obligor.

### D. Other Issues

█ Granting a part of appellant's modification motion, the court ordered respondent to pay half of the child's non-covered medical expenses, but the court failed to provide that this order was retroactive to the date of the motion. The record shows a factual dispute on the nature of uninsured expenses incurred after the motion in August 1992 and prior to the court's order in December 1992. There was no abuse of discretion in refusing retroactive relief on uninsured medical expenses. *See Finch v. Marusich,* 457 N.W.2d 767, 770 (Minn.App.1990) (trial court discretion on modification retroactivity).

█ Child support orders must contain certain notices regarding enforcement. *See, e.g.,* Minn.R.Gen.Pract. 303.06 (1992). An obligor's liability for medical needs is deemed child support for the purpose of enforcement. Minn.Stat. § 518.171, subd. 10. Appellant contends the trial court erred in omitting these notices from its order. Compliance with the pertinent statutes and rules should occur on remand.

█ Appellant contends the trial court erred in denying her request for attorney fees incurred in the motion proceedings. Both parties ask for fees incurred on appeal. The trial court's decision on fees will rarely be reversed. *Maeder v. Maeder,* 480 N.W.2d 677, 680 (Minn.App.1992), *pet. for rev. denied* (Minn. Mar. 19, 1992). We have previously declined to correct a decision on fees where the request, like appellant's here, was not documented by an affidavit of the client or counsel. *Currey v. Currey,* 393 N.W.2d 683, 686–87 (Minn.App.1986). There was no error in the trial courts denial of relief on fees. We conclude respondent must contribute $500 on appellant's appeal fees.

### DECISION

The trial court's denial of appellant's motion is reversed, and the case is remanded for further trial court proceedings consistent with this opinion.

**Reversed and remanded.**