In re the Marriage of DuWayne
R. JOHNSON, Petitioner,
Appellant,

v.

Barbara J. JOHNSON, Respondent.

Nos. C1–94–2348, C5–95–29.

Court of Appeals of Minnesota.

June 27, 1995.

Steven A. Sicheneder, Tennis and Sicheneder, Forest Lake, for appellant.

Kathryn A. Graves, Moore, Costello & Hart, P.L.L.P., Minneapolis, for respondent.

Considered and decided by HUSPENI, P.J., and NORTON and KLAPHAKE, JJ.

## OPINION

NORTON, Judge.

This appeal is from an order retroactively modifying child support and from a judgment of arrears. Appellant challenges the retroactive increase of child support for a period almost four years prior to the date respondent filed her motion for modification. He also contends that the court erred when it modified child support based upon his earnings from an increase in overtime work. We reverse the retroactive increase prior to August 1, 1991. We reverse the balance of the support modification and remand for reconsideration consistent with this opinion.

## FACTS

Appellant DuWayne R. Johnson and respondent Barbara J. Johnson were divorced in January 1989 after a ten-year marriage. As part of the dissolution settlement, the parties stipulated that DuWayne pay $500 per month for support of the parties' two minor children based upon net monthly income of $1,670. This net income figure did not include overtime income. Since the dissolution, the child support obligation has increased to $593.75 due to automatic cost-of-living increases.

DuWayne has been employed as a conductor/brakeman with the Chicago & Northwestern Railroad since April 2, 1971. His hourly wage rate is based upon the number of miles, hours, cars, and crew members, and his position on the crew for each route he works. Because of DuWayne's current position on the seniority list, he is able to choose the routes he wants. He can choose routes which require him to work more than a 40–hour work week at a higher rate of pay or he can choose routes where his work does not exceed a 40–hour work week.

DuWayne's gross income from his employment with Chicago & Northwestern Railroad during the years 1987–1993 was:

| Year | Amount |
|------|--------|
| 1987 | $37,704 [1] |
| 1988 | 32,569 |
| 1989 | 45,403 |
| 1990 | 45,284 |
| 1991 | 60,147 |
| 1992 | 45,201 |
| 1993 | 62,407 |

The record does not contain specific evidence of DuWayne's income prior to 1987.

In April 1994, Barbara moved for an increase in child support retroactive to 1990, based upon the substantial increase in DuWayne's income and an increase in the children's needs. She presented evidence of the children's current needs, but did not present evidence of the children's needs for the years 1990 to the date of her motion in 1994. A family court referee heard the motion.

Barbara contended that she was unable to challenge earlier the level of child support because DuWayne had refused to comply with the judgment and decree and provide verification of his income. The judgment and decree directed DuWayne to provide copies of his pay stubs on a quarterly basis. It also required that he provide Barbara with a copy of his state and federal income tax returns "immediately after their filing every year throughout the duration of his child support obligation." Barbara explained that DuWayne had repeatedly refused her verbal requests for these records and only responded after her attorney sent him a written demand in 1994.

Barbara's net monthly income increased from $1,700 at the time of the parties' dissolution to a current net monthly income of $2,230.82. Barbara stated that she recently received a promotion and has been offered an increase in salary. She did not know what her new income would be.

The referee found that DuWayne's current net monthly income for child support purposes is $3,362.53, based upon his 1993 income tax returns. The referee refused to exclude DuWayne's overtime income, finding that DuWayne had regularly earned overtime income during the parties' marriage, except for the year of the dissolution pro-

---

1. DuWayne earned an additional $1,872 as a union officer in 1987, resulting in 1987 gross income of $39,576.

ceedings, 1988, when he had not worked overtime.

The referee determined that DuWayne's failure to provide copies of his income records on time constituted fraud upon the court and justified a retroactive modification of child support. The court ordered judgment of $14,399.38 for child support arrearages, based upon a schedule of retroactive increases beginning June 1, 1990.[2] Prior to the modification order and judgment of arrears, DuWayne had made all child support payments; there were no arrears based on the prior child support order. Although Du-Wayne presented undisputed evidence, including pay stubs, showing that he had been injured in December 1993 and did not return to work until mid-April of 1994, the referee's schedule of retroactive child support included payments for full increases in those months.

DuWayne did not seek district court review of the referee's decision; instead he appealed directly to this court.

### ISSUES

1. Did appellant timely appeal from the judgment of child support arrears?

2. Does appellant's increase in income warrant modification of his stipulated child support obligation?

3. Did the court err in ordering an increase in child support retroactive to 1990?

4. Is respondent entitled to an award of attorney fees for this appeal?

### ANALYSIS

#### I.

█ DuWayne appealed from the order retroactively modifying child support and ordering a judgment of arrears. We dismissed that portion of DuWayne's appeal relating to the retroactive modification of support because the retroactive increase had been reduced to judgment and DuWayne had not appealed from that judgment. DuWayne subsequently appealed from the judgment of arrears and we consolidated the two appeals.

Barbara argues that, because DuWayne filed his notice of appeal 75 days after entry of the judgment, we must dismiss the second appeal. We disagree.

Minn.R.Civ.App.P. 104.04, titled "Marital Dissolution," provides the times to appeal from certain judgments and orders in dissolution proceedings. Even though appeal from the underlying order is governed by this rule, Barbara contends that rule 104.04 does not apply to the judgment here because it is not one of the enumerated judgments in that rule. Nevertheless, the judgment here resulted from the grant of a motion to modify child support which is a "special proceeding." *See Angelos v. Angelos*, 367 N.W.2d 518, 520 (Minn.1985) (modification of child support is a "special proceeding"). Minn.R.Civ.App.P. 104.03 governs the time to appeal from "special proceedings" and provides similar time requirements as in rule 104.04. The time to appeal from a judgment in a special proceeding arising from a dissolution action expires 30 days after the adverse party serves notice of filing. *Hofseth v. Hofseth*, 456 N.W.2d 99, 100–01 (Minn.App.1990).

Because Barbara did not serve notice of filing to limit the time of the October 20 judgment for arrearages, DuWayne's appeal from that judgment, filed 75 days after its entry, is timely. *See id.*

#### II.

Modification of child support is within the district court's discretion; this court will not reverse the modification absent an abuse of that discretion. *Kuronen v. Kuronen*, 499 N.W.2d 51, 53 (Minn.App.1993), *pet. for rev. denied* (Minn. June 22, 1993). The court may modify child support only after a party shows a change of circumstances that makes the existing order unreasonable and unfair. Minn.Stat. § 518.64, subd. 2(a) (Supp.1993); *Kuronen*, 499 N.W.2d at 53. The court may find a change of circumstances

upon a showing of one or more of the following: (1) substantially increased * * * earnings of a party; (2) substantially in-

---

**2.** The referee set the following schedule of child support: $772.76 per month for June 1, 1990 through May 31, 1992; $800.33 for June 1, 1992 through December 31, 1992; $1,041.94 for January 1, 1993 through December 31, 1993; and, $1,008.60 as of January 1, 1994.

creased or decreased need of a party or the child or children.

Minn.Stat. § 518.64, subd. 2(a).

DuWayne contends that the court should have excluded his overtime income when it calculated his net income for purposes of modifying child support. He argues that the court erred in using his 1993 tax returns to calculate his 1994 income, and that the court should have subtracted business expenses from his net income. He claims that the modification of support is not warranted because Barbara's financial circumstances have improved and the children's needs have not increased since entry of the prior support order.

### 1. *DuWayne's income.*

#### a. *Overtime.*

In 1990, the legislature amended the statutes governing calculation of net income of child support obligors to exclude the obligor's income from excess employment if certain statutory factors were met. 1990 Minn.Laws ch. 574, §§ 18, 22 (modifying Minn.Stat. §§ 518.551, subd. 5, 518.64, subd. 2). As amended, the statute governing modification of child support now provides, in part:

> On a motion for modification of support, the court * * * shall not consider compensation received by a party for employment in excess of a 40–hour work week, provided that the party demonstrates, and the court finds, that:
>
> (i) the excess employment began after entry of the existing support order;
>
> (ii) the excess employment is voluntary and not a condition of employment;
>
> (iii) the excess employment is in the nature of additional, part-time employment, or overtime employment compensable by the hour or fractions of an hour.

Minn.Stat. § 518.64, subd. 2(b)(2) (Supp. 1993). Prior to this amendment, the child support statutes expressly excluded only income of the obligor's spouse from consider-

ation. *See* Minn.Stat. §§ 518.551, subd. 5(b); 518.64, subd. 2 (1988).

■ The referee did not apply the section 518.64 factors. Instead, the referee applied the factors for initial establishment of child support. *See* Minn.Stat. § 518.551, subd. 5(b)(2)(ii) (Supp.1993) (factors applied to consideration of overtime income). Because this case concerns modification of a prior support order, rather than the initial establishment of support, the referee should have applied the factors in section 518.64, not the factors from section 518.551.

■ The center of the dispute here is whether DuWayne meets factor (i), requiring that his overtime began "after entry of the existing support order." Minn.Stat. § 518.64, subd. 2(b)(2)(i). When the parties were divorced, they stipulated that child support be based upon DuWayne's income in 1988, a year that both parties agree DuWayne worked full time but did not work overtime. The referee found, however, that DuWayne regularly earned overtime prior to commencement of the dissolution proceeding in November 1987. The evidence of DuWayne's higher income in 1987 and Barbara's affidavit support this finding. Based upon this finding, we hold that consideration of DuWayne's overtime income was not error. In so holding, we are cognizant of the provision whereby the court, when first establishing child support, looks back two years, to consider the obligor's work patterns. *See* Minn.Stat. § 518.551, subd. 5(b)(2)(ii)(B) (providing for exclusion of overtime income if the "excess employment reflects an increase in the work schedule or hours worked over that of the two years immediately preceding the filing of the [dissolution] petition"). We do not hesitate here to reach back to DuWayne's overtime income in 1987, the year DuWayne filed the petition, one year prior to entry of the dissolution decree.

■ It appears, however, that a portion of DuWayne's excess employment did first begin after entry of the prior support order.[3]

---

**3.** DuWayne claims that his 1994 gross annual pay without overtime would be $37,874, up approximately 16% from 1988. The union pay rates effective July 1993 indicate a higher annual

guarantee of $41,600 ($3,466.67 × 12) for a conductor. The only evidence of overtime prior to the parties' dissolution was the $5,100 differential between DuWayne's 1987 and 1988 railroad

We view the statute as a legislative effort to limit the use of overtime income for children that were covered under a dissolution decree. The plain language reflects the legislature's intent to allow noncustodial parents to move ahead without having all earnings go to the benefit of the children. While the legislature did not have in mind to disregard increased earnings from a promotion or new job, it did intend the limitation to apply to wage earning obligors who earn hourly pay for work in excess of 40 hours per week. Accordingly, we hold that when a support obligor shows that he or she is working more overtime hours than he or she worked during the marriage, the court should prorate the overtime income and view the extra post-dissolution overtime as excludable in a modification proceeding.

Where the record shows that DuWayne is paid an hourly wage and that his current excess income far exceeds the amount of excess employment he performed for the same job during the parties' marriage, the referee should have determined whether DuWayne began a portion of the excess employment after entry of the existing support order and satisfied the requirement set forth in Minn.Stat. § 518.64, subd. 2(b)(2)(i). We remand with directions that the district court review the totality of circumstances here and determine what portion of DuWayne's overtime exceeds the level of overtime he worked during the parties' marriage and whether that excess income meets other factors for exclusion under Minn.Stat. § 518.64, subd. 2(b)(2).[4]

### b. 1993 tax returns.

■ DuWayne argues that the court erred in using his 1993 tax returns rather than his 1994 pay stubs to calculate his current income. Cf. Merrick v. Merrick, 440 N.W.2d 142, 146 (Minn.App.1989) (holding that trial court should have used pay stubs dating from January to June, rather than prior year's tax returns, to calculate current income). The court must determine current net income for purposes of setting child support. Thomas v. Thomas, 407 N.W.2d 124, 127 (Minn.App. 1987).

DuWayne's argument that the referee should have determined his income by averaging the year-to-date totals in his pay stub is meritless. Such a calculation would result in an understatement of DuWayne's monthly income because the year-to-date totals do not include any income from January to April 19 when DuWayne was on disability.

DuWayne's pay stubs show monthly gross income of $5,489.97 for May 1994. DuWayne's average monthly gross income in 1993 was a lesser amount ($5,200.61, based upon 1993 annual gross pay of $62,407.26). Under these circumstances, the referee's use of DuWayne's 1993 tax returns to establish current net income for 1994 was not error.[5]

### c. Business expenses.

■ When calculating DuWayne's net income, the referee correctly deducted union dues, pursuant to Minn.Stat. § 518.551, subd. 5(b), but did not mention DuWayne's other claimed business expenses. There is no statutory deduction for business expenses. See id.

DuWayne contends that Bartl v. Bartl, 497 N.W.2d 295, 300 (Minn.App.1993) supports his claim for deduction of other business expenses to calculate his net income. We disagree. Bartl concerned crediting business expenses as part of the obligor's needs; it

---

wages. The post-decree differential of $20,000–$25,000 far exceeds the prior excess and is an indication that DuWayne is now working a greater amount of overtime.

4. We are not persuaded by the referee's comment indicating that DuWayne's extra income is based only upon the choice of route, number of crew, number of cars on the train and his position on the crew. See Minn.Stat. § 518.64, subd. 2(b)(2)(iii) ("excess income is * * * additional * * * or overtime employment compensable by the hour or fractions of an hour"). The union pay schedule shows that DuWayne's pay is based

upon an hourly wage and that the hourly wage varies according to these factors. Many of the routes include overtime at "time and one half." DuWayne presented a letter from his employer stating that he has sufficient seniority to obtain a route with a 40–hour week and no overtime.

5. We are only affirming the court's use of the 1993 tax return. While the district court may use DuWayne's 1993 income to calculate his current income, it must subtract any excess overtime that may appropriately be excluded from consideration.

did not involve a deduction of business expenses to calculate the obligor's net income. *Id.* at 299–300.

*Martin v. Martin,* 364 N.W.2d 475, 477–78 (Minn.App.1985) is also distinguishable. In that case, this court held that the trial court did not err when it deducted meal and lodging expenses to determine net income of an obligor who was an independent over-the-road truck driver. *Id.* Unlike Ramon Martin, DuWayne is not self-employed. Further, DuWayne's "meals and entertainment" expenses are personal expenses that should be listed in his monthly budget. We discern no clear error in the failure to deduct business expenses, other than union dues, when calculating DuWayne's net income.

## 2. *Change in circumstances.*

The statute provides:

It is presumed that there has been a substantial change in circumstances * * * and the terms of a current support order shall be rebuttably presumed to be unreasonable and unfair if the application of child support guidelines in section 518.551, subdivision 5, to the current circumstances of the parties results in a calculated court order that is at least 20 percent and at least $50 per month higher or lower than the current order.

Minn.Stat. § 518.64, subd. 2(a). In determining whether the statutory presumption has been rebutted, the court must evaluate and make findings regarding the custodial parent's circumstances, the obligor's circumstances, and those of the children. *Bock v. Bock,* 506 N.W.2d 321, 324 (Minn.App.1993). The referee found that DuWayne's income had increased 70% and child support based upon his entire net income would be 102% greater than the original award. The referee did not make findings regarding DuWayne's expenses, nor is there any indication that he assessed those circumstances. The failure to do so was error. *Id.*

The referee made erroneous findings regarding the children's circumstances. Barbara contends, and the referee so found, that the needs of the children have almost doubled since the prior support order. The record does not support this finding. To show an increase in the children's needs, the referee adopted Barbara's view that a ⅔ share of current family household needs, transportation and consumer debt expenses should be attributable to the children. The referee then compared the children's augmented needs to their prior needs which did not include family expenses. Thus, the referee was comparing "apples to oranges" when he compared the children's 1994 combined expenses to their separate 1989 expenses. Instead, the referee's findings show that the separate needs of the children have actually decreased from $1,335 to a current level of $1,129 since the prior support order. On remand, we direct the district court to compare either the children's separate expenses for 1989 and 1994, or their combined expenses for each of those years.[6]

DuWayne also notes that Barbara's financial circumstances have improved since entry of the prior support order.

After recalculating DuWayne's net income, if the district court determines that the presumption for modification applies here, the district court should reevaluate the parties' circumstances to determine if DuWayne has rebutted that presumption. *Bock,* 506 N.W.2d at 324. The court should consider the fact that the parties fixed their obligations in the dissolution decree by stipulation, while keeping in mind that "the welfare of the child takes precedence even if the case involves a stipulation." *Moylan v. Moylan,* 384 N.W.2d 859, 865 (Minn.1986) (citing *Petersen v. Petersen,* 296 Minn. 147, 148, 206 N.W.2d 658, 659 (1973)).

## III.

DuWayne challenges the retroactive increase of his support obligation. Generally,

---

6. We also question the court's adoption of Barbara's and the children's expenses without further scrutiny. A closer look at the current family expenses shows that they include a significant increase in PITI and maintenance of the homestead. They also include $200 for "consumer debt checking plus." We question the appropri-

ateness of attributing ⅔ of the payments for equity and maintenance of an asset that is Barbara's property and not that of the children. A ⅔ share of consumer debt appears to be a duplication of other listed expenses, further inflating the children's expenses.

the court may order retroactive modification of child support only to the date of service of the motion to modify the existing support order. Minn.Stat. § 518.64, subd. 2(c).

However, modification may be applied to an earlier period if the court makes express findings that the party seeking modification was precluded from serving a motion by reason of a significant physical or mental disability, a material misrepresentation of another party, or fraud upon the court and that the party seeking modification, when no longer precluded, promptly served a motion.

*Id.*

■ The referee determined that DuWayne committed fraud upon the court when he failed to comply with the dissolution decree's order to provide pay stubs on a quarterly basis and tax returns annually, even after Barbara had repeatedly requested them. We disagree. The record here is not sufficient to show that DuWayne "engaged in an unconscionable scheme or plan to influence the court improperly." *Maranda v. Maranda*, 449 N.W.2d 158, 165 (Minn.1989). Our inquiry, however, does not end here.

Barbara argues that the referee's findings support a conclusion that DuWayne's failure to produce pay stubs and tax returns, as required by court order, was a misrepresentation for purposes of retroactive support modification. We agree. *See* Minn.Stat. § 518.64, subd. 2(c) ("material misrepresentation" is basis for retroactive support modification); *M.H. v. Caritas Family Servs.*, 488 N.W.2d 282, 288 (Minn.1992) (misrepresentation is concealing or not disclosing facts that one has a duty to disclose).

DuWayne notes that Barbara did not make a written request for his pay and time records until her attorney wrote him a letter in 1994, prior to filing the motion for modification. But Barbara's failure to obtain the services of an attorney earlier does not excuse DuWayne's refusal of her oral requests to comply with the disclosure order contained in the dissolution decree. To hold differently would undermine the effectiveness of that order. It would place the burden and expense on Barbara to seek the immediate assistance of an attorney to preserve the children's right to support. The detailed disclosure schedule contained in the parties' dissolution decree was intended to hold DuWayne accountable for providing regular income information to Barbara so she could readily assess the circumstances and bring a timely motion to modify support. On these facts, we hold that DuWayne's failure to timely comply with the court-ordered disclosure of his income data constitutes a material misrepresentation of his financial circumstances. This misrepresentation justifies a retroactive modification of child support for the period prior to service of the modification motion in April 1994 if the circumstances prior to filing of the motion warrant a modification. We now turn to a review of those circumstances.

■ The only evidence of changed circumstances prior to April 1994 is the increase in DuWayne's income. Barbara did not provide evidence of her or the children's circumstances between the date of the dissolution decree in 1989 and the filing of her motion in 1994. Prior to August 1991, the statute did not contain the rebuttable presumption that a support order is unreasonable and unfair based upon a sufficient increase in the obligor's income. *See* 1991 Minn.Laws ch. 292, art. 5, § 79 (amending Minn.Stat. § 518.64, subd. 2 to add presumption). Prior to that amendment, case law provided that

merely showing an increase in the noncustodial parent's income, without any evidence of a change in circumstances for the custodial parent and child, [is] insufficient grounds on which to alter the parties' stipulation.

*Moylan*, 384 N.W.2d at 865 (citing *Kaiser v. Kaiser*, 290 Minn. 173, 182, 186 N.W.2d 678, 684 (1971)). Accordingly, because there is no evidence of Barbara's and the children's circumstances prior to 1994 and because the parties stipulated to the prior child support order, the order increasing child support prior to August 1, 1991, constitutes an abuse of discretion and must be reversed.

We also reverse the increased support ordered for the period after August 1991 and remand for reconsideration and recalculation

because, as we previously discussed, the lower court's treatment of DuWayne's overtime income and the parties' and the children's circumstances contains reversible errors.

On remand, the district court must apply the appropriate presumptions and standards for modification of child support each time the court adjusts the level of retroactive support. *See* Minn.Stat. § 518.64, subd. 2. The referee did not do this. For that reason also, we must reverse the schedule of retroactive support increases. We note that the modification statute did not contain an express presumption of changed circumstances until August 1, 1993, but only expressed a presumption regarding unfairness and unreasonableness of the prior order. *Compare* Minn. Stat. § 518.64, subd. 2 (Supp.1991) *with* Minn.Stat. § 518.64, subd. 2 (Supp.1993). The referee did not apply either of these presumptions to the retroactive modifications. The district court may determine the disparate applicability, if any, of these presumptions on remand.

 Finally, the referee assessed arrears for retroactive support during periods that DuWayne was disabled. For example, the court ordered a retroactive increase in support for December 1993 to April 17, 1994, when DuWayne's income was limited to disability pay of $33 per day for five days per week. This decision was also error.

### IV.

 Barbara seeks an award of appellate attorney fees pursuant to Minn.Stat. § 518.14 (Supp.1993) based upon need and bad faith. We have reviewed the parties' incomes and needs and we do not believe that Barbara has demonstrated an inability to pay her fees. DuWayne's appeal is meritorious and has not "unreasonably contribute[d] to the length [and] expense of the proceeding." *See id.* (bad faith basis for fees). Barbara has primarily listed events that happened in the proceedings below. An award of fees on this basis would result in a duplicative award because the referee granted an award of attorney fees to Barbara for the proceedings before that court.

 Barbara also claims that DuWayne's attempt to appeal from a nonappealable portion of the referee's order, and the subsequent dismissal of that portion of DuWayne's original appeal, supports an award of appellate fees because she incurred unnecessary duplicative attorney fees when she had to respond to DuWayne's second appeal from the judgment of arrears. We refuse to award fees based upon the oversight of DuWayne's attorney. We deny Barbara's motion for fees.

### DECISION

The referee did not make sufficient findings regarding the parties' and the children's needs to support its modification of support. The court erred in its analysis of DuWayne's overtime income. The court erred in ordering a retroactive modification of child support prior to August 1991.

We reverse the court's retroactive modification of the parties' stipulated child support prior to August 1, 1991. We reverse and remand the balance of the retroactive and current child support increases for reconsideration and recalculation consistent with this opinion.

**Reversed and remanded.**